25 So.2d 527

**KOTCH et al. v. BOARD OF RIVER PORT PILOT COM'RS FOR PORT OF NEW ORLEANS et al.**

No. 37809.

Feb. 11, 1946.

Rehearing Denied March 18, 1946.

O'Niell & O'Niell, of New Orleans, for plaintiffs-appellants.

Lemle, Moreno & Lemle, of New Orleans, for defendants-appellees.

ROGERS, Justice.

Plaintiffs hold first class pilot licenses from the United States Government and are experienced pilots on the Mississippi River and other waters. They brought this suit against the Board of River Port Pilot Commissioners for the Port of New Orleans and the individual members thereof to have Act 54 of 1908, as amended by Act 134 of 1942, under which the defendant Board was created and is operating, declared to be unconstitutional and to have its enforcement enjoined; or, in the alternative, to have the amendatory act declared to be unconstitutional and to have its enforcement enjoined. In the further alternative, plaintiffs pray if Act 54 of 1908 and its amendment be held to be valid, that the defendants be ordered by mandamus to examine them on their qualifications as pilots and, finally, to certify them to the Governor for appointment. Defendants filed an exception of no cause of action, which was sustained and the suit dismissed. Plaintiffs have appealed from the judgment.

In 1908 the Legislature passed an act regulating the system of river port pilotage for the Port of New Orleans, providing for a board of river port pilot commissioners, defining its duties, prescribing the necessary qualifications for port pilots and fixing their charges. Act 54 of 1908.

Section 1 of the act creates the Board of River Port Pilot Commissioners for the Port of New Orleans to consist of three citizens to be appointed by the Governor with the consent and advice of the Senate. Sections 2 and 3 provide for the appointment and commissioning by the Governor of twenty-eight pilots from those pilots who were actively and continuously engaged for one year previous to the passage of the act in piloting sea-going vessels from the head of the Passes to the Port of New Orleans and return. Section 4 declares that whenever there exists a necessity for more pilots among the river port pilots, the Board of River Port Pilot Commissioners shall hold examinations of applicants for appointment under such rules and regulations and with such requirements as they shall have provided, with the approval of the Governor; provided no applicant shall be considered by the Board unless he submits proper evidence of moral character, is a voter of the State, and shall have served six months apprenticeship in his proposed calling. Section 4 further provides, upon the certificate of the Board to the Governor that the applicant has complied with the provisions of the act, the Governor may in his discretion appoint to existing vacancies.

Act 134 of 1942 amends Act 54 of 1908 by providing it shall be the duty of the body of pilots known as "River Port Pilots" to pilot sea-going vessels from Pilot Town to Southport and return and within the Port of New Orleans, and providing further that the river port pilots shall be entitled to the exclusive right to pilot vessels within the Port of New Orleans between Southport and Mereauxville.

Plaintiffs' petition alleges, in substance, that Act 54 of 1908, on its face, is violative of the Fourteenth Amendment of the Federal Constitution and of Section 2 of Article 1 of the State Constitution. The petition further alleges that the legislative act does not contain any provision for competent examinations and also fails to lay down any rules for the Board to follow in the commissioning of pilots, but, on the contrary, the act vests in the Board arbitrary powers in that connection. That the Board has always assumed and exercised arbitrary authority in respect to the commissioning of pilots; that no examinations have ever been held by the Board; that appointments have always been made on a personal basis—the appointee being first "elected" by vote of the members of the Port Pilots Association, an organization composed exclusively of commissioned river pilots; that the three members composing the Board are members of the Crescent River Port Pilots Association, and in the vast majority of cases the appointees have been kinsmen of one or more of the pilots, with no experience whatever as pilots prior to their election.

The petition further sets out the names of a number of pilots who were appointed in 1938 and 1944, the last time appointments were made, and also sets out their relationship to those pilots then holding commissions or to pilots formerly holding commissions; that thirty-four of the forty-one pilots presently holding commissions are related to other pilots or to their predecessors.

The petition alleges it is a matter of common knowledge that membership as a commissioned pilot is closed to all persons except those favored by the pilots; that nevertheless four of the petitioners, whose names are mentioned at various times, made formal application to the defendant Board to be considered as applicants for examination as pilots and that their applications have been ignored. That being barred by the provisions of Act 54 of 1908 from piloting vessels in foreign trade on the Mississippi River below the limits of the Port of New Orleans, petitioners in the past have largely centered their activity to the Port itself, but that under the provisions of Act 134 of 1942, amending Act 54 of 1908, they are prohibited from piloting vessels engaged in foreign trade within the Port and are placed in a position where they are not able to make a living since the coastwise business is not sufficient for their support.

The petition alleges that for the above reasons Act 54 of 1908 and its amendment, Act 134 of 1942, are unconstitutional, and that in addition thereto Act 134 of 1942 is unconstitutional because it is a local or

special law which was not preceded by notice or publication as prescribed by Section 6 of Article 4 of the Constitution of 1921.

▮ The contentions raised by the petition require this Court to determine whether Act 54 of 1908 and its amendatory Act 134 of 1942, on the face thereof are violative of the Federal and State Constitutions; whether if they are constitutional the acts have been rendered unconstitutional by the arbitrary, discriminatory and unjust way in which they have been administered by the defendant Board and, in the alternative, whether Act 134 of 1942 is a local or special law enacted without the constitutional requirement of notice or publication. In considering these contentions it should be kept in mind that under the exception of no cause of action only the well pleaded facts and not the conclusions of law contained in the petition must be accepted as true.

▮ Pilot regulations are regulations of commerce upon navigable waters. In Ex parte McNiel, 13 Wall. 236, 238, 20 L.Ed. 624, it was said by the Supreme Court of the United States: "It must be admitted that pilot regulations are regulations of commerce. A pilot is as much a part of the commercial marine as the hull of the ship and the helm by which it is guided; * * *. Pilots are a meritorious class, and the service in which they are engaged is one of great importance to the public. It is frequently full of hardship, and sometimes of peril; night and day, in winter and summer, in tempest and calm, they must be present at their proper places and ready to perform the duties of their vocation. * * *"

▮ It has long been settled by decisions of the Supreme Court of the United States that although state laws concerning pilotage are regulations of commerce they fall within that class of powers which may be exercised by the states until Congress has seen fit to act upon the subject. Cooley v. Society for Relief of Distressed Pilots, Their Widows and Children, Board of Wardens of Port of Philadelphia to use of, 12 How. 299, 13 L.Ed. 996; Ex parte McNiel, 13 Wall. 236, 20 L.Ed. 624; Wilson v. McNamee, 102 U.S. 572, 26 L.Ed. 234; Olsen v. Smith, 195 U.S. 332, 25 S.Ct. 52, 49 L.Ed. 224, Anderson v. Pacific Coast Steamship Co. 225 U.S. 187, 32 S.Ct. 626, 56 L.Ed. 1047.

Since Congress has not acted to relieve vessels engaged in foreign trade from the provisions of state pilotage laws, the State has power to legislate concerning such pilotage.

Pilotage is not merely a business. It is a highly specialized and hazardous calling which, in the absence of action by Congress, is under the control of the State. By the adoption of Act 54 of 1908, as amended by Act 134 of 1942, the Legislature, in the protection of the public interest, has undertaken to regulate pilotage on the Mississippi River on vessels engaged in foreign trade from the Passes at the mouth of the river to Southport above New Orleans, which includes the pilotage of such vessels within the port itself.

▮ Plaintiffs agree that the pilotage of vessels engaged in foreign trade is subject to state regulation, but they insist that

such regulation must not be arbitrary or discriminatory, which they contend is the case with respect to the statutes in question. Plaintiffs' contention is based upon the Fourteenth Amendment to the Federal Constitution and Section 2 of Article 1 of the State Constitution. The argument is that the right of a person to render pilotage services is a fundamental right guaranteed by the constitutional provisions, and that therefore Act 54 of 1908, as amended by Act 134 of 1942, providing for the commissioning of pilots and restricting the right to pilot to the duly commissioned pilots are violative of those provisions. But the argument in effect merely denies that pilotage is subject to governmental control and has been settled to the contrary by numerous decisions of the Supreme Court of the United States.

■ It is indisputable that the right to follow any of the ordinary occupations of life is one of the privileges of citizenship, and this includes the right to pursue any lawful occupation without statutory restrictions except such restrictions as may be applied to all persons pursuing the same occupation under the same conditions. But it is also indisputable that there are certain occupations in which the public has such interest as will make those occupations subject to statutory regulations, or even prohibition. The constitutional provisions on which plaintiffs rely were not designed to interfere with the public powers of the State; and within the limits stated by the Constitution, Federal and State, the Legislature is free to determine what subjects are proper to be legislated upon in the conservation of order, morals, health and safety. The cases relied on by plaintiffs, including the much cited case of Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L. Ed. 220, holding invalid a municipal ordinance which authorizes the issuing or withholding of a license to one engaged in a lawful business and which grants to an officer or set of officers the authority to determine the number of persons who shall engage in that business, have no application to a legislative act which vests in a board of port commissioners the power to license and determine who shall render pilotage services and limiting the number thereof.

■ The argument that the statutes under review confer upon the commissioned pilots a monopoly of the business and permits them by a combination among themselves to exclude all other persons from rendering pilotage service is also in effect a denial of the power of the State to regulate the business since, if the State has power to regulate and in so doing to name and commission those who are to perform pilotage service, it must follow that no monopoly or combination in a legal sense can arise from the fact that the duly authorized agents of the State are alone allowed to perform the duties devolving upon them under the law.

The authorities support the legal propositions we have hereinabove referred to concerning the right of the State to control and regulate the business of pilotage within its territorial limits. Thus in People ex rel. Palmer v. Woodbury, 14 Cal. 43, a statute of California was sustained, which provided for a board of commission-

ers with power to appoint such number of pilots as they might deem necessary, not exceeding thirty. There it was left to the discretion of the board to determine the number of pilots, subject only to the provision fixing the maximum number of such pilots. In Caples v. McNaught, 147 Or. 72, 31 P.2d 780, 781, a legislative act was sustained which created a board of pilot commissioners and made it its duty, "to maintain a sufficient number of pilots upon the bar and river pilot ground to meet the demands of commerce * * *." In that case also the court upheld the right of the Legislature to confer upon the pilot commissioners the power to determine the number of pilots.

The leading and controlling case on the subject is Olsen v. Smith, 195 U.S. 332, 25 S.Ct. 52, 55, 49 L.Ed. 224. There the Supreme Court of the United States announced the principles that should be applied in determining the constitutionality of legislative acts regulating pilotage. In that case, the constitutionality of an Act of the Legislature of the State of Texas regulating the business of pilotage was sustained. The Texas law, like the Louisiana law, provided that the Governor should appoint a board to which was granted the power of fixing charges, regulating the manner in which the pilots should perform their duty, examining them as to their qualifications, hearing complaints against them and, if the occasion required, to suspend them until the Governor should act. The authority was conferred upon the Governor to appoint such number of branch pilots as might from time to time be necessary, each of whom should hold office for two years, subject to removal by the Governor at pleasure. Anyone who was not duly commissioned was prohibited from engaging in the business of pilotage so far as the statute provided for rendering of pilotage services by the duly appointed pilots. The only difference between the Texas law and the Louisiana law is that the Board of Pilot Commissioners under the Louisiana law is composed of three members, whereas the Texas board is composed of five members. The nature of their powers and duties is substantially the same. The term of appointment under the Texas law is for two years. Under each statute, however, the pilots so appointed are subject to removal by the Governor at pleasure. The Supreme Court of the United States, speaking through Mr. Justice White, later Chief Justice, and formerly a Justice of this Court, held that no inherent rights guaranteed by the Federal Constitution are infringed by state regulations providing for the appointment of pilots and restricting the right to pilot to those duly appointed. And further, since the State, under its power to regulate, has the right to appoint and commission pilots, no monopoly or combination can arise from the fact that the authorized agents of the State are alone permitted to perfom the duties with which they are charged under the law. After discussing these propositions, Justice White remarked as follows: "When the propositions just referred to are considered in their ultimate aspect they amount simply to the contention, not that the Texas laws are void for want of power, but that they

are unwise. If an analysis of those laws justified such conclusion,—which we do not at all imply is the case,—the remedy is in Congress, in whom the ultimate authority on the subject is vested, and cannot be judicially afforded by denying the power of the state to exercise its authority over a subject concerning which it has plenary power until Congress has seen fit to act in the premises." And so we may remark here, if the statutes in question are unwise the remedy lies with the Legislature in whom the ultimate authority on the subject is vested and not with the court to deny the right of the power of the State to exercise its authority over a matter wholly within its control.

Many authorities are cited on behalf of plaintiffs which announce or reaffirm sound principles of law, but we fail to find their application to the issues involved in this case. For example, it is argued that the doctrine for which plaintiffs contend is sustained by the case of State v. Board of Pilotage Commissioners, 198 Wash. 695, 90 P.2d 238. Counsel for plaintiff insists that this case is exactly in point. We can not agree. It is true in that case the Supreme Court of the State of Washington, by a divided Court, held that under the law of Washington the Board of Pilot Commissioners must hold examinations and issue certificates to those successfully passing the examination. But, as shown by the opinion of the Court, that was because there was nothing in the statute specifically giving the Board the right to limit the number of pilots. Under the terms of the statute every person was given the right to take the ex-

amination and, if he successfully passed, to receive a certificate. In other words, the statute of Washington, which was involved in that case, did not limit the number of pilots, but merely created a board to hold examinations and issue certificates. There was no limit placed upon the number of pilots and the mere possession of a certificate of proficiency entitled the holder to operate as a pilot. Under the statutes of this State the mere passing of an examination does not entitle the successful applicant to a commission as a pilot. The number of pilots is limited and the appointments are made by the Governor from the list of successful applicants only when the Governor is informed by the Board that the necessity exists for the creation of additional pilots. The difference between the law of Washington and the law of Louisiana is clear. Under the law of Washington, the Governor does not appoint, but the commissioners are compelled to issue a certificate to anyone who successfully passes the required examination. Under the law of Louisiana, a person can only become a pilot when he has served an apprenticeship, has passed the examination, and has received a commission from the Governor.

In discussing the cases of Olsen v. Smith, Caples v. McNaught and Palmer v. Woodbury, the Supreme Court of Washington pointed out that those cases were distinguishable on the facts from the case which it was deciding and that also in those cases the Legislature of the respective states, either directly or by implication, conferred authority upon the board or in-

dividuals to limit the number of pilots whereas, the statute of Washington conferred no such power on the board either expressly or impliedly.

It is argued with great earnestness on behalf of plaintiffs that if the statues in question are constitutional on their face, they are rendered unconstitutional by the arbitrary manner in which they are administered by the defendant Board of River Pilot Commissioners. In plaintiffs' petition it is alleged that the defendant Board has always assumed and exercised authority with respect to the commissioning of pilots; that no examinations have been held and that appointments have always been made on a personal basis, the appointee being first selected by the members of the Crescent River Port Pilots Association, an organization composed exclusively of commissioned river pilots and of which the three defendant commissioners are members; that in a vast majority of cases, the appointees have been kinsmen of one or more of the pilots with no pilotage experience whatever prior to their selection; and that it is a matter of common knowledge membership as a commissioned pilot is closed to all except those having the favor of the pilots.

 Generally speaking, the constitutionality of a statute must be determined not by what is done, but what it authorizes to be done under its provisions. Thus in Ward v. Lêche, 189 La. 113, 179 So. 52, this Court recognized and followed the principle of constitutional law that courts can not annul or pronounce void

any act of the Legislature on any other ground than that of repugnancy to the Constitution.

 The fact that power is particularly given and may be abused by incompetent or unscrupulous officials chosen to administer it does not justify the argument that the power itself can not be constitutionally exercised, for it is only because of the existence of the power that makes possible its abuse.

 The allegations of the petition to which we have referred are, in their essence, that the Crescent River Port Pilots Association controls the commissioning of pilots. But there is a clear distinction existing between the Board of River Pilot Commissioners and the River Pilots Association. The Board of Commissioners is composed of pilots commissioned by the Governor as officers of the State. The Pilots Association is a private corporation organized under the general corporation laws of the State. The Legislature, in adopting Act 54 of 1908, recognized the need for an association of pilots and so provided. Section 6 of the Act provides: "That said river port pilots may form themselves into an association or associations, as to them may seem fit, not in conflict with law or the rules and regulations of the River Port Pilot Commissioners."

As was pointed out by the Supreme Court of the United States in Ex parte McNiel, 13 Wall. 236, 20 L.Ed. 624, the service in which pilots are engaged is one of great importance, frequently full of hardship and sometimes of peril and, regardless of time

and weather conditions, they must be in their places ready to perform the duties of their vocation. Pilots must board ships, and there must be a pilot boat ready at all times to take the pilot to and from the ships. Pilot stations, crews to operate the pilot boats, and pilots to care for vessels which arrive at irregular intervals must be constantly maintained to promptly furnish the needed service. If, in view of these considerations, the Legislature concluded that an association of pilots rather than pilots operating singly and alone would best serve the purpose of commerce and navigation, it is not for the Courts to question the wisdom of the Legislature in enacting the legislation authorizing the creation of the River Port Pilots Association and limiting the membership thereof. There is nothing in the law which requires the Crescent River Port Pilots Association to admit to membership persons not of their selection. If an apprenticeship must be served under pilots who are members of the association, because as a practical matter it may not be served otherwise, there is nothing in the law which forbids this situation to arise.

It is argued that the Board of River Port Pilots dictates the appointment of pilots but, when tested by the terms of the statute itself, the argument must fall. The only power conferred by the statute upon the Board of Pilot Commissioners is the power, when the necessity exists for additional pilots, to hold examinations under such rules and regulations and with such requirements as they may provide, with the Governor's approval. In holding these examinations, the Board is limited to applicants who submit proper evidence of their moral character, are voters of the State, and have served six months apprenticeship in their proposed calling. Upon the certificate of the Board to the Governor that the applicants have complied with the provisions of the act, the Governor may, in his discretion, appoint to existing vacancies. The Board of Commissioners has nothing to do with the selection of apprentices. Plaintiffs' charge that only a favored few may become apprentices is a charge levelled against the Pilots Association and has no relation whatsoever to any action of the Board. The statute does not provide for the appointment of those making the highest grades. It merely provides that the applicant shall have served an apprenticeship of six months and have passed the examination prescribed by the Board of Commissioners. The right to make the appointment is conferred upon the Governor and plaintiffs can not be heard to complain because the Governor in exercising his authority appoints some persons who are closely related to other pilots instead of ignoring such relationship and appointing plaintiffs. The reasons which move the Governor to make the appointments are beyond judicial inquiry.

It is argued that Act 134 of 1942 is a special or local law, enacted by the Legislature without compliance with the provisions of Section 6 of Article 4 of the Constitution, requiring previous publication of notice of the intention to apply for its enactment. State v. Clement, 188 La. 923, 178 So. 493, is cited in support of the ar-

gument. But we do not understand that the cited case establishes a different rule from those cases which point out the distinction between a special law and a general law. The statute involved in that case restricted its application to swamp lands whose boundaries were within one hundred and fifty miles of the shore line of the Gulf of Mexico. It did not affect swamp lands located in other portions of the State. The court, after discussing the principles governing special laws and general laws, respectively, held that the classification of areas contained in the statute was wholly arbitrary and unreasonable and by reason thereof it became a special law within the constitutional provision, requiring publication, and not a general law.

The leading case of State v. Dalon, 35 La.Ann. 1141, 1144, contains a full discussion on the subject of special laws and general laws. In that case the legislative act organizing the Criminal District Court for the Parish of Orleans was involved. Dalon, who was convicted of arson, challenged the validity of his conviction on the ground that the creation of the machinery of the Criminal District Court was a local or special law requiring publication, because it did not operate throughout the State and all of the parishes thereof. The Court, after characterizing the contention as preposterous and one that could not stand criticism, pointed out that: "The real distinction between public or general laws and local or special laws is, that the former affect the community as a whole, whether throughout the State or one of its subdivisions; and the latter affect private persons, private property, private or local private interests."

There are a number of decisions of this Court holding that a statute is not a special or local law merely because of the fact that the conditions under which it can operate prevail in only certain parts of the State. See State v. Donato, 127 La. 393, 53 So. 662; City of Shreveport v. Nejin, 140 La. 785, 73 So. 996; State v. Nejin, 140 La. 793, 74 So. 103; State v. McCue, 141 La. 417, 75 So. 100; Clark v. City of Opelousas, 147 La. 1, 84 So. 433.

In State v. Donato, a liquor statute that was resticted to apply only to prohibition parishes, was held to be a general law notwithstanding the restriction. In that case this Court held: "A law, general in its terms, applying to all persons * * *, is not a 'local law' * * * merely because the conditions under which it can operate prevail only in certain parts of the state."

The general rule is set forth in 59 Corpus Juris, at page 536, as follows: "A statute is not a local or special law within the meaning of constitutional provisions requiring · notice if persons or things throughout the State are affected, or if it operates on a subject in which the people at large are interested, even though its enforcement be restricted to a particular locality, or if an act is both general and special or private."

Pilots are State officers, created by the Legislature. A source of legislative authority is the police power of the State. Its exercise is in the promotion of

the general welfare. The fact that the Legislature deemed it necessary to regulate pilotage on the Mississippi River between Southport and Pilot Town, but did not find it necessary to regulate pilotage in other parts of the State does not make the regulatory statute a local or special law. The statute was adopted by the Legislature in the exercise of State sovereignty and the fact that the exercise of such sovereignty is not required for the regulation of pilotage throughout the State does not bring the law within the requirement of Section 6 of Article 4 of the Constitution. The test of whether a law is special or local is whether it operates only on a certain number of persons, within a class, but does not affect generally all persons within that class. The regulation by the Legislature of pilotage between Southport and Pilot Town without attempting to regulate it where such regulation is not needed is a matter solely for legislative determination. It would lead to an absurd result for the Legislature, in the exercise of the sovereign powers of the State, to prescribe regulations for pilots on every bayou and stream in the State. The congestion of shipping within the harbor of the Port of New Orleans and on the Mississippi River between Pilot Town and the upper limits of the port is obviously the reason for the legislation. Its need grows out of the congestion of such shipping and the demands of interested parties for the protection of commerce by the regulation of pilotage. No argument is necessary to sustain the proposition that the Legislature is not required to regulate pilotage where such regulation is not needed in order to regulate pilotage where such pilotage is needed.

Plaintiffs ask, in the alternative, that the defendant Board be ordered to examine them as to their qualifications as pilots and, finally, to certify them to the Governor for appointment as such. But, in so asking, plaintiffs fail to show the need for additional pilots and that they have served an apprenticeship of six months as required by the statute. What plaintiffs are seeking, in the final analysis, is the right to become pilots upon the Mississippi River under the provisions of Act 54 of 1908, as amended, without showing compliance with the provisions of the statute. Plaintiffs, in effect, ask the court to compel the Governor to name them as pilots notwithstanding, when their demand is tested by the terms of the statute, no vacancy exists and notwithstanding plaintiffs do not possess the qualifications required by the act. Plaintiffs ask the court to do those things because they allege that the Crescent River Port Pilots Association, a private organization created under the terms of the act, selects its own apprentices, as it is authorized to do under the statute. But the Court can not comply with plaintiffs' request without creating in lieu of a constitutionally enacted statute a ruling of its own, based upon the alleged hardship arising out of the selection by the Crescent River Port Pilots Association of the apprentices who might thereafter become members of the organization. This the Court can not do. The justice or injustice of the statutory provision permitting the River Port Pilots Association to select ap-

prentices is a question for the Legislature and not for the Court.

For the reasons assigned, the judgment appealed from is affirmed.

HAWTHORNE, J., takes no part.

O'NIELL, C. J., recused.