STOKER, Judge.
This is an appeal from a judgment granting a preliminary injunction restraining appellant Robert Kaltenbach from performing any construction work within the jurisdiction of the Acadian Metropolitan Code Authority (AMCA) without the necessary building permits, plumbing license, or any other permit or license required by law, and in particular, restraining him from performing any construction work at 106 Crawford Street, Lafayette, Louisiana, property of Nelson Miller.
The defendant-appellant represented himself in this matter and filed his own brief on appeal to this Court.
Robert Kaltenbach was a contractor engaged in residential construction and remodeling. He has done electrical, plumbing, and air conditioning work along with all other phases of home construction with, as he put it in his brief, “the help of a well-trained chimpanzee.” He has ignored the building construction ordinances of Lafayette Parish.
The Lafayette Parish Police Jury and several municipalities in the parish entered into an Inter-governmental Agreement in 1980. This Agreement created the Acadian Metropolitan Code Authority and enacted building construction regulations for the municipalities entering the agreement and for the unincorporated areas of the parish. Mr. Kaltenbach contends he is not subject to the authority of the AMCA.
Kaltenbach contends he is a “Free and Natural person with an Occupation of Com *160 mon Rights” and is therefore not subject to the Acadian Metropolitan Code Authority. He also argues that the Inter-Governmental Agreement creating the Acadian Metropolitan Code Authority is defective because it was not signed and because it was not published. He also argues that it deprives him of his Constitutional rights.
We find that the Inter-Governmental Agreement was validly executed. We hold that it is a valid exercise of the police power and that Kaltenbach is subject to the Acadian Metropolitan Code Authority.
Kaltenbach argues that the InterGovernmental Agreement creating the Aca-dian Metropolitan Code Authority is invalid because it is not signed. The agreement in the record is signed by the president of the Lafayette Parish Police Jury and all ordinances adopting the agreement are signed. This argument lacks merit.
Kaltenbach argues that the ordinance is not valid in that it'does not set forth all its terms but adopts certain building standards by reference to other documents. Although R.S. 33:1325 requires that intergovernmental agreements set forth their terms in writing, we believe that such agreements may adopt by reference terms set out in other written documents.
Kaltenbach contends the Agreement is invalid because it was not published. There was no evidence at the hearing on the rule for preliminary injunction on whether or not the agreement was published. Since Mr. Kaltenbach has not proved that it was not published, we cannot hold it invalid.
The Inter-governmental Agreement is a valid exercise of police power. The police power is a power inherent in every governing authority to govern persons and things, and within constitutional limits, to prescribe regulations for the promotion of public health, safety, morals, and general welfare. Wes-T-erre Dev. v. Parish of Terrebonne, 416 So.2d 209 (La.App. 1st Cir.1982), writ denied, 421 So.2d 251 (La.1982). All the local governments involved in the agreement could exercise police power. Under Article 6, Section 20 of the Louisiana Constitution, political subdivisions may exercise any authorized power jointly or in cooperation with one or more political subdivisions. The Agreement provided for such a joint exercise of police power.
The test of whether an ordinance is a constitutionally valid exercise of police power depends on whether under all circumstances, the regulation is reasonable and whether it is designed to accomplish a purpose properly falling within the scope of the police power. Wes-T-erre Dev. v. Parish of Terrebonne, supra; Hi-Lo Oil Company v. City of Crowley, 274 So.2d 757 (La.App. 3rd Cir.1973), writ refused, 277 So.2d 673 (La.1973).
The court, in the Hi-Lo Oil Company case set forth the appropriate analysis is to be used in determining the validity of an ordinance. It stated the following:
“The ordinance should be upheld if any set of facts can be conceived from which it could be concluded that there is a reasonable relationship between its provisions and the public health, safety, morals or general welfare. Everhardt v. City of New Orleans, supra. In order to justify a holding that the legislative action is arbitrary, unreasonable or unnecessary, it must be shown that there was no room for a reasonable difference of opinion, and that there was no substantial evidence upon which the legislative action could have been justified. Torrance v. Caddo Parish Police Jury, 119 So.2d 617 (La.App. 2 Cir.1960); Archer v. City of Shreveport, 85 So.2d 337 (La.App. 2 Cir.1956).

“In order that a city ordinance may be sustained as the legitimate exercise of the city’s police power, however, the legislation must have for its object the prevention of some offense or manifest evil, or the preservation of the public health, safety, morals or general welfare. The exercise by the city of its police power must have a substantial basis if it is to *161 be upheld. The purported exercise of that power cannot be made a mere pretext for legislation that does not fall within it. There must be some substantial connection between the purpose of the regulation and the provisions of it, and the provisions must in some appropriate manner be designed for and tend toward the accomplishment of the legitimate objects for which the power is exercised. City of New Orleans v. Southern Auto Wreckers, 193 La. 895, 192 So. 523 (1939); Schwegmann Bros. v. Louisiana Board, Etc., 216 La. 148, 43 So.2d 248 (1940); City of Lake Charles v. Hasha, 238 La. 636, 116 So.2d 277 (1959); Arkansas Louisiana Gas Company v. Louisiana Department of Highways, 104 So.2d 204 (La.App. 2 Cir.1958)
We believe there is a reasonable relationship between the ordinances and the safety and general welfare of the public. The Agreement sets forth standards, licensing requirements, and permit requirements for construction, alterations, removal, demolition, equipment, use and occupancy, location and maintenance of buildings, for installation, repair, maintenance, alteration and use of air conditioning, heating, mechanical refrigeration, and ventilating systems, for installation, construction, maintenance, extension, removal, demolition and erection of plumbing and electrical wiring, and for installation of electrical fixtures, machinery and equipment. It also sets forth inspection requirements for such projects. We believe the regulations are valid to promote the health and safety of the public. They protect the public from poor workmanship and materials in buildings which could be dangerous. These regulations are designed to prevent dangerous conditions arising from poor workmanship in buildings.
Mr. Kaltenbach states that the AMCA has not shown that he has done anything creating a danger to life, health or public safety. The AMCA is not required to make such a showing. The AMCA may protect the public by enforcing the regulations before such dangers arise. The Authority is not required to wait for an accident to happen. These rules are designed to prevent the accidents.
Kaltenbach argues that he is engaged in an occupation of common rights not subject to regulation. The term “occupation of common rights” appears to be a term of art in certain jurisprudence. However, considering Kaltenbach’s occupation for what it is, construction work, the government unquestionably has a right to regulate it.
“It is indisputable that the right to follow any of the ordinary occupations of life is one of the privileges of citizenship and this includes the right to pursue any lawful occupation without statutory restrictions except such restrictions as may be applied to all persons pursuing the same occupation under the same conditions. But it is also indisputable that there are certain occupations in which the public has such interest as will make those occupations subject to statutory regulations, or even prohibition. The constitutional provisions on which plaintiffs rely were not designed to interfere with the public powers of the State; and within the limits stated by the Constitution, Federal and State, the Legislature is free to determine what subjects are proper to be legislated upon in the conservation of order, morals, health and safety.”
Kotch v. Board of River Port Pilot Com’rs., 209 La. 737, 25 So.2d 527 (1946), affirmed, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093, rehearing denied, 331 U.S. 864, 67 S.Ct. 1196, 91 L.Ed. 1869.
Kaltenbach states that he does not endanger the public with his “ordinary and harmless” occupation. He admitted at the hearing that he does electrical work. We believe that this is certainly an occupation that could endanger the public.
Kaltenbach asserts in his brief that he will reserve certain issues for future appeals. He is entitled to one appeal to this Court. He may not appeal to this Court again on other grounds.
*162 The AMCA seeks damages for frivolous appeal. Damages for frivolous appeal will not be allowed unless it manifestly appears that the appeal was taken solely for delay or that appealing counsel does not seriously believe in the view of the law he advocates, even though the appeal lacks serious merit. Franklin v. Franklin, 338 So.2d 1199 (La.App. 3rd Cir.1976). This appeal was not taken for purposes of delay since an order granting a preliminary injunction is not suspended during the pendency of an appeal unless the court so orders. This injunction was not ordered suspended. We believe that Kaltenbach, in representing himself, is sincere in his belief in the arguments he makes. We will not award damages for frivolous appeal.
For the foregoing reasons, the judgment of the trial court granting the preliminary injunction is affirmed. The matter is remanded to the trial court for further proceedings. The costs of this appeal are taxed to appellant, Robert Kaltenbach. The taxing of costs at the trial level are to await the final disposition of this matter.
AFFIRMED AND REMANDED.