531 So.2d 436 (1988)
CONCERNED BUSINESS AND PROPERTY OWNERS OF DeSOTO, INC., et al.
v.
DeSOTO PARISH SCHOOL BOARD.
No. 88-CA-1028.
Supreme Court of Louisiana.
July 8, 1988.
Rehearing Denied July 22, 1988.
*437 John F. Ward, Jr., Ward & Hammonds, Robert E. Plummers, Asst. Dist. Atty., for appellant.
Walter F. Johnson, III, Walter D. White, Nelson, Hammons & Johnson, Leslie B. Bagley, for appellee.
William J. Guste, Jr., Atty. Gen., William M. Cady, III, Asst. Dist. Atty., for respondent.
CALOGERO, Justice.
Plaintiffs, certain DeSoto Parish taxpayers,[1] challenge the results of a recent election which authorized the DeSoto Parish school board to issue bonds for the construction and renovation of schools within two DeSoto Parish school districts. Plaintiffs argue that La.R.S. 39:562, which authorizes school districts to incur bonded indebtedness for the construction or improvement of school facilities, is an unconstitutional local and special law because, as amended by Act 103 of 1980, it provides a different bonded indebtedness limitation for school districts within DeSoto Parish and three other designated parishes (35%) than it does for all other school districts throughout the state (25%). Plaintiffs further contend that because the election was conducted pursuant to the authority of an unconstitutional statute, the results of that election should be overturned and the DeSoto school districts should be enjoined from incurring any bonded indebtedness.
Prior to its amendment by Act 103 in 1980, La.R.S. 39:562(C) provided that the maximum bonded indebtedness which may be incurred by any school district in the state is 35 percent of the assessed valuation of taxable property in each district. For reasons which are not entirely clear, the Legislature also specifically provided in R.S. 39:562(D) that the 35 percent limitation (made generally applicable to school districts throughout the state by Paragraph (C) of the same statute) was also applicable to school districts within DeSoto Parish and three other parishes.
Act 103 of 1980 amended R.S. 39:562(C) by lowering the bonded indebtedness limitation for school districts statewide from 35 percent to 25 percent. However, 39:562(D)'s 35 percent limitation for school districts within DeSoto Parish and three other parishes was reenacted by the 1980 amendment.
We determine herein that the 1980 amendment to La.R.S. 39:562 (Act 103 of 1980) is unconstitutional, because that amendment effectively converted R.S. 39:562 into an impermissible local and special law when it reduced the bond limit for all school districts in the state from 35 *438 percent to twenty-five percent but at the same time reenacted the 35% limit for DeSoto Parish school districts.
However, our conclusion that Act 103 of 1980 is unconstitutional does not require us to overturn the DeSoto Parish election results or to enjoin the issuance of bonds by the school districts concerned. La.R.S. 39:562 remains in force as worded prior to the unconstitutional 1980 amendment, and continues to authorize all school districts in the state, including those in DeSoto, to issue bonds and incur indebtedness up to the 35% ceiling. Therefore, the DeSoto school districts involved may issue bonds as authorized by R.S. 39:562 prior to the 1980 amendment.

(I) FACTS AND PROCEEDINGS BELOW
In a general election held October 24, 1987, two propositions involving schools were presented to the voters of DeSoto Parish. Proposition one sought voter approval for a parishwide ad valorem property tax, the proceeds of which would be used for the purpose of maintaining and operating school facilities throughout the parish. Proposition two sought voter approval for the issuance of bonds in school districts 1, 2, 4 and 5 of DeSoto Parish, for the purpose of contructing new schools and renovating existing ones.
Proposition one, the ad valorem property tax, passed parishwide. Proposition two, providing for the issuance of bonds, was approved in school districts 4 and 5, and disapproved in school districts one and two.
Plaintiffs instituted the present litigation by filing two separate actions against the DeSoto Parish School Board. In suit no. 47,714, entitled "Petition to Contest Election," the plaintiffs alleged that the ad valorem tax authorized by proposition one was illegal because of substantial irregularities in the election process. Among other matters, the plaintiffs alleged that members of the school board who supported the tax failed to disclose that they personally paid for advertisements in support of the proposition, that such advertisements were deceptive, that the official publications of the school board misrepresented the nature of the election and that the school board violated open meeting laws when it proposed the tax. Plaintiffs later amended their petition in this suit to allege that R.S. 39:562(D) & (F) are unconstitutional local and special laws. The relief requested by the plaintiffs in this lawsuit was a court order annulling the results of the election, with respect to both propositions one and two.
In suit no. 47,716, entitled "Motion for Judgment," plaintiffs limited their attack to proposition number two. They alleged that R.S. 39:562(D) & (F) are unconstitutional local and special laws, and that proposition two was illegal because it authorized the issuance of bonds pursuant to those unconstitutional statutory provisions. Plaintiffs also prayed for an injunction prohibiting the issuance of any such bonds.
The two suits were consolidated for trial. The school board filed an exception of no cause of action which primarily addressed plaintiffs' allegations that the election should be overturned because of procedural irregularities and the actions of individual school board members. On February 2, 1988, the trial judge sustained the defendant's exception of no cause of action as to all issues in the case except for the constitutionality of R.S. 39:562(D) & (F), and the effect that any finding of unconstitutionality might have on the election, issues on which the trial judge deferred rulings until after trial on the merits. This judgment (partially sustaining the defendant's exception of no cause of action) has not been appealed.
After trial of the remaining issues on the merits, the district court issued a second judgment on April 12, 1988, declaring that R.S. 39:562(D) & (F) are not unconstitutional. The court of appeal reversed, being of the view that R.S. 39:562(D) & (F) (the sections of the statute which authorize a 35% debt limit for DeSoto school districts) constitute "an indirect enactment of a special or local law by the partial repeal or suspension of the general law in direct contravention of LSA-Const. Art. 3, § 12(B)." Concerned Business and Property *439 Owners of DeSoto, Inc. v. DeSoto Parish School Bd., 528 So.2d 567, 572 (La. App. 2nd Cir.1988). The court of appeal, finding the statute partially unconstitutional, declined to invalidate the election. Instead, it held that the offending sections (Paragraphs D & F) are severable from the remainder of the statute. Consequently, the court of appeal determined that the two DeSoto Parish school districts involved may incur bonded indebtedness up to the general 25 percent level allowed by Paragraph C of the statute.
We now consider the school board's appeal from the court of appeal's judgment.[2] The plaintiffs have filed an answer to that appeal in which they urge this Court to grant them greater relief than was ordered in the court of appeal. They are not satisfied with the court of appeal's simply authorizing issuance of bonds not in excess of the 25 percent limit. They seek to have the election results for both propositions overturned, and the issuance of any bonds (by the school districts which approved proposition two) enjoined.

(II) ANALYSIS
(A) Legislative History of La.R.S. 39:562

The first issue which confronts this Court is the constitutionality of La.R.S. 39:562.[3] R.S. 39:562 was originally enacted by the Legislature in 1921. As originally enacted, this statute generally limited the bonded indebtedness of all political subdivisions in the state to ten percent of the assessed valuation of the taxable property within each political subdivision. That ten percent limitation remains the law today, with certain limited exceptions. R.S. 39:562(B).
The Legislature amended the statute in 1948 to provide that parishwide and special school districts may incur debt and issue bonds for the purposes of acquiring school sites, erecting and equipping school buildings and improving school property. As amended, the statute allowed such school districts to incur bonded indebtedness up to 15 percent of the assessed valuation of the taxable property within the district. See Acts 1948, No. 359, § 1. The statute was amended again in 1952, at which time the bonded indebtedness ceiling for school districts was raised to 20 percent. Three years later, that limit was raised to 25 percent. See Acts 1952, No. 469, § 1; Acts 1955, No. 136, § 1.
Then, in 1979, R.S. 39:562 was amended again (Act 375 of 1979), this time to increase the debt limitation for school districts to 35 percent. In the process of increasing the debt limitation for school districts, Act 375 divided R.S. 39:562 into four lettered paragraphs. Paragraph A defined the terms "general obligation bonds" and "bonded debt." Paragraph B restated the general provision that no political subdivision may incur bonded indebtedness in excess of the long established ten percent ceiling. Paragraph C qualified Paragraph B by providing that school districts could incur bonded indebtedness up to a 35 percent ceiling. Finally, Paragraph D provided that school districts in three parishes, DeSoto, Red River and Sabine, could incur *440 bonded indebtedness up to the same 35 percent ceiling recited in Paragraph C for all school districts.[4]
As enacted, Act 375 thus contained a redundancy. Because Paragraph C generally provided that the bonded indebtedness limitation for school districts was 35 percent, it was unnecessary for the Legislature to have provided in Paragraph D that school districts within DeSoto, Red River and Sabine Parish would be subject to the same limitation.[5]
R.S. 39:562 was amended again in 1980. Act 103 of 1980 reduced the bond ceiling for all school districts (Paragraph C) from 35 percent to 25 percent. Act 103 also added Livingston Parish to the three parishes specified in Paragraph D, for whom a 35 percent limit was particularly specified. The 35 percent limitation for the four parishes then listed in Paragraph D (DeSoto, Sabine, Red River and Livingston) was thus not changed by the 1980 amendment.
In its current form, then, R.S. 39:562 contains a school districts general bonded indebtedness limitation of 25 percent (Paragraph C), but it allows school districts within DeSoto Parish and three other parishes to incur indebtedness up to a 35 percent ceiling. This present disparate treatment (the consequence of serial revisions in the law) prompts this attack on R.S. 39:562(D) & (F) for constituting an unconstitutional local and special law.[6]
*441 (B) Is La.R.S. 39:562 In Whole or In Part A Prohibited Local and Special Law?
Article 3, § 12 of the Louisiana Constitution absolutely forbids the enactment of "local or special laws" pertaining to specific matters. Pertinent to this litigation, Art. 3, § 12(A) provides that:
(A) Prohibitions. Except as otherwise provided in this constitution, the legislature shall not pass a local or special law:

. . . . . .
(8) Regulating the management of parish or city public schools, the building or repairing of parish or city schoolhouses, and the raising of money for such purposes.....
Art. 3, § 12(B) further provides that the Legislature "shall not indirectly enact special or local laws by the partial repeal or suspension of a general law."
On the other hand, local and special laws are permissible if they pertain to subject matters not listed under Art. 3, § 12(A), or if they are otherwise allowed by the constitution. However, local and special laws that are not prohibited by Art. 3, § 12 must be enacted pursuant to the local notice and publishing requirements set forth in Art. 3, § 13.
The plaintiffs argue that R.S. 39:562 is a local and special law because it treats school districts within four parishes differently from school districts in the other sixty parishes in the state, and that the statute pertains to matters (building and repairing schools) for which local and special laws are prohibited under Art. 3, § 12(A)(8). Alternatively, they argue that even if the statute somehow could be construed not to pertain to the management of public schools, it is nonetheless invalid as a local and special law because the recent amendments to the statute which specifically pertain to DeSoto Parish (and three others) were not advertised in that parish prior to enactment in the manner required by Art. III, § 13.
In State v. Labauve, 359 So.2d 181, 182 (La.1978), this Court summarized the jurisprudence interpreting Art. 3, § 12 of the Louisiana Constitution, and the distinction between general laws and local or special laws, as follows:
The jurisprudence interpreting Article 3, Section 12 of the 1974 Constitution (as well as Article 4, Section 4 of the Louisiana Constitution of 1921, the corresponding provision in the old constitution), indicates that a statute is local or special if its restrictions can operate on or affect only a portion of the citizens or a fraction of the property embraced within the classification created, while a general law is one which operates equally and uniformly upon all persons brought within the relations and circumstances for which it provides or operates equally upon all of a designated class, founded upon a reasonable and proper classification. Davenport v. Hardy, 349 So.2d 858 (La. 1977); State ex rel. Miller v. Henderson, 329 So.2d 707 (La.1976); Teachers' Retirement System of Louisiana v. Vial, 317 So.2d 179 (La.1975); Kotch v. Board of River Port Pilot Commissioners, 209 La. 737, 25 So.2d 527 (1946), affirmed 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947); State v. Dalon, 35 La.App. 1141 (1883).
These cases establish that a law is not automatically local or special simply because its enforcement may be limited to a particular area. The operation of certain laws may be triggered only in those areas where certain objective criteria are met, such as population requirements or geographical restrictions. The fact that such *442 laws do not apply in areas where those objective criteria cannot be met does not make them local or special. Labauve, 359 So.2d at 182. "Rather the factor which makes a statute special or local is that it operates in one locality without the possibility of extending its coverage to other areas should the requisite criteria exist there...." Id. (emphasis added).
Prior to the 1980 amendment, La.R.S. 39:562 was unquestionably a general law because it operated equally and uniformly in all school districts. It is true that Act 375 of 1979 added Paragraph (D) to the statute, which contained specific references to DeSoto, Red River and Sabine Parish. However, the fact is that the 35 percent bonded indebtedness limitation which Act 375 of 1979 provided in Paragraph D for those designated parishes was identical to the limitation which that act provided for all school districts in Paragraph C of the statute. Whatever the reason for the redundancy contained in Paragraphs C and D of Act 375, the statute as enacted (and, in fact, as earlier introduced in the House of Representatives) uniformly limited all school districts in the state to the same bonded indebtedness ceiling (35%), and cannot be considered a local or special law.
Act 103 of 1980 reduced the bond indebtedness limitation in Paragraph C (for all school districts) from 35 percent to 25 percent, but reenacted Paragraph D's 35 percent limitation for DeSoto and three other designated parishes. (Paragraph (F), which repeats the 35% limitation for DeSoto Parish, was also added by a separate act, see footnote six, supra).
Plaintiffs contend, and the court of appeal concluded, that by amending the statute in this fashion, the Legislature de facto created a local law for DeSoto Parish and the other parishes designated in Paragraphs D and F. In reaching its conclusion that those paragraphs of the statute are unconstitutional, the court of appeal relied on Art. 3, § 12(B) of the state constitution, which provides that the Legislature "shall not indirectly enact special or local laws by the partial repeal or suspension of a general law."
We agree that the 1980 amendment resulted in the enactment of a local or special law through the partial repeal of a general law. The fatal flaw in Act 103 of 1980 was that it reduced the bond limitation made generally applicable by Paragraph (C) to all school districts from 35 percent to 25 percent while simultaneously reenacting a 35 percent limit for school districts within DeSoto and three other designated parishes.
As emphasized in State v. Labauve, 359 So.2d at 182, a law is not local or special merely because its enforcement may be limited to a particular area, but a law which is so limited is local and special if "it operates in one locality without the possibility of extending its coverage to other areas should the requisite criteria of its statutory classification exist there...." Id. Concluding that a law was local and special which proscribed certain conduct in only two designated parishes, we further explained in Labauve that:
When the operation of a law is limited to certain parishes, it is suspect as a local or special law. If its operation is so limited solely through the effect of a reasonable general classification (such as population size or physical characteristics), the law should not be considered within the prohibition of Art. 3, Section 12(A). See Johnson, Legislative Process, 36 La.L.Rev. 549 (1976); cf. Nomey v. State, 315 So.2d 709 (La.1975). However, if its operation is limited solely by its specific designation of certain parishes it must be considered a local law violative of our constitution.

Id. at 183. (emphasis added)
For no discernible reason, La.R.S. 39:562, as amended by Act 103 of 1980, allows school districts within DeSoto and three other designated parishes a bond limitation which is ten percent higher than the limitation which applies to all other school districts in the state. The statute simply singles out DeSoto and three other parishes for different treatment, without relying on any objective criteria for doing so.
Further, the subject matter of Act 103 is clearly covered by Art. 3, § 12(A)(8)'s prohibition against local and special laws *443 which regulate "the management of ... public schools" and "the building and repairing of ... schoolhouses, and the raising of money for such purposes..." As Act 103 pertained to the bonded indebtedness limitation which school districts may incur for the purpose of raising funds to build or repair schools, it is obviously covered by the prohibition contained in Art. 3, § 12(A)(8).
Thus, we conclude that Act 103 of 1980 is a local and special law that is prohibited by our state constitution. However, we do not adhere to the court of appeal's conclusion that the 25 percent limitation made applicable to all school districts by Act 103's amendment of Paragraph (C) somehow survives as valid and controlling law.
The court of appeal reasoned that the objectionable provisions of the statute are those which allow DeSoto school districts a 35 percent limitation, and concluded that only those provisions (Paragraphs (D) & (F)) need be declared unconstitutional. The court of appeal further concluded that the 25 percent limitation contained in Paragraph (C) (and reduced from 35 percent by Act 103) survives independently of the offending portions of the statute, and should not be declared unconstitutional because the 25 percent limitation "is the latest expression of the legislative will as to the bonded debt limitation for the entire state." 531 So.2d at 440.
We disagree. La.R.S. 39:562 was not a local and special law prior to its amendment by Act 103 of 1980. At that point in time, the bonded indebtedness limitation was uniformly 35 percent throughout the state. A local and special law was created by virtue of the fact that Act 103 simultaneously lowered the bond limit applicable to school districts in sixty parishes while re-enacting a higher limit for school districts within DeSoto Parish and three other designated parishes. The section of Act 103 which reduced R.S. 39:562(C)'s applicable limit in sixty parishes by virtue of its general application thereto is not a constitutional provision. To the contrary it was that change in the law, coupled with the retention of a portion of the existing law [paragraph D's 35 percent limit for four parishes] that gave rise to two local and special provisions, constitutionally defective because violative of Art. 3, § 12(B)'s prohibition. Thus, Act 103 of 1980 was unconstitutional in its entirety and no provision thereof can be given effect. The thrust of Act 103 was to change the debt limitation in sixty of the state's sixty-four parishes. Otherwise, the debt limitation remained the same. Were the severability clause of the Act to be invoked it is more logical to effect the invalidity of the change (subsection C) than to throw out the unchanged portion of the Act (subsection D) which theretofore had no legal impediment due to the uniformity of its percentage provision. The two subsections are inseparable because they interact upon one another resulting in the creation of twolocal and special provisions.
This conclusion, however, does not entitle plaintiffs to the relief that they have requested (judgment overturning the election results and enjoining the issuance of bonds by the school districts). Act 103 of 1980 purported to amend La.R.S. 39:562(C) & (D), provisions which, as we have noted, were constitutional prior to the amendment. An unconstitutional act which purports to amend a prior constitutional statute cannot accomplish that objective. The unconstitutional act, having no effect, can amend nothing. Instead, the applicable law is provided by the statute as worded prior to the unconstitutional amendment. State In Interest of Hunter, 387 So.2d 1086, 1090 (La.1980); Vieux Carre Property Owners & Associates, Inc. v. City of New Orleans, 246 La. 788, 167 So.2d 367 (1964); State v. Donato, 127 La. 393, 53 So. 662 (La.1910); Helling v. Webster Parish Police Jury, 523 So.2d 904, 908 (La.App. 2nd Cir.1988).
Act 103 of 1980, being unconstitutional in its entirety, was ineffective to amend La.R.S. 39:562(C) & (D), and that statute, as worded prior to its amendment *444 by Act 103 (and as revised by other acts which are not under scrutiny here) remains in effect. The DeSoto Parish school districts in which bond issuances were approved in the recent election may incur bonded indebtedness up to the 35 percent limitation which is provided by the statute (the 1980 amendment not being considered) for all school districts. Plaintiffs are not entitled to have the elections results overturned, the issuance of bonds enjoined, or the bonded indebtedness limited to 25%.

Decree
The judgment rendered by the court of appeal in favor of the plaintiffs is reversed. Judgment is rendered in favor of the defendants, at plaintiffs' costs. It is further ordered, adjudged and decreed that any application for rehearing in this case be filed in this court not later than three days from rendition of this judgment.
REVERSED AND RENDERED.
DENNIS, J., concurs in part, dissents in part and assigns reasons.
LEMMON, J., dissents and will assign reasons.
MARCUS, J., dissents and assigns reasons.
DENNIS, Justice, concurring in part and dissenting in part.
I respectfully concur in the majority's determination that the act in question is an unconstitutional local law if the provisions granting exceptional treatment to four parishes are maintained. Although I question whether a law which does not appear to discriminate against any parish or the state should not be given greater deference, it is now well settled that when the operation of a law is limited to certain parishes, it is suspect as a local or special law, and if its operation is limited solely by its specific designation of certain parishes, it must be considered a local law violative of our constitution. State v. LaBauve, 359 So.2d 181, 183 (La.1978).
Nevertheless, I do not agree that the partial invalidity of the act so disembowels it that it must fall as a whole. Act 103 of 1980 contains three portions with which we are concerned: Paragraph C sets the assessment limit statewide at 25%. Paragraph D sets it at 35% for the four exceptionally treated parish school districts. Section 2 is a severability clause providing that if any provision of the act is held invalid, such invalidity shall not affect other provisions, items, or applications of the act which can be given effect without the invalid provisions, etc., and that to this end the provisions of the act are declared severable.
The requirements of the severability clause have been met because the balance of the act can be given effect without the invalid provision. The two jurisprudential tests, viz., whether the legislature would have passed the statute had it been presented with the invalid features removed, and whether the general object of the act can be achieved without the invalid part, State v. Johnson, 343 So.2d 705, 708-09 (La.1977); Guidry v. Roberts, 335 So.2d 438, 447-48 (La.1976), also have been met. The legislature, in effect, declared that it would have passed the statute without the invalid features in the severability clause of the act. Without the repugnant clause the statute forms a complete act within itself, and is reasonable in light of the act as originally drafted. The main goal of the legislature to set the limit of indebtedness for public school districts will not be defeated by the invalidity of paragraph D setting a different limit for four parish school districts.
MARCUS, Justice (dissenting).
I concur in the majority's conclusion that Act 103 of 1980 is a local and special law that is prohibited by our state constitution. However, I disagree with the majority that the partial invalidity of the act mandates that it must fall as a whole. I consider that the offensive portion of the act (Paragraph D) is severable from the valid portion *445 (Paragraph C). Accordingly, I respectfully dissent.
NOTES
[1] The named plaintiffs are several individual DeSoto Parish taxpayers, as well as Concerned Business and Property Owners of Desoto, Inc., a corporation formed on behalf of a number of DeSoto Parish taxpayers.
[2] Because the court of appeal declared a portion of the statute unconstitutional, the school board had an appeal of right to this Court. See La. Const., Art. 5, § 5.
[3] As explained earlier in this opinion, plaintiffs originally raised a number of challenges to the validity of the election which were independent of their argument that R.S. 39:562 is unconstitutional (e.g., violation of open meeting laws, advertising irregularities, improper conduct by school board members, etc.). However, the trial court's February 2, 1988 judgment dismissed all of plaintiffs' claims except for the constitutional challenge to the statute, and no appeal was taken from that judgment. While the court of appeal discussed and rejected the peripheral, non-constitutional challenges to the election raised by the plaintiffs, we need not consider those issues here, because the trial court's judgment dismissing those claims became final.

By answering the school board's appeal, plaintiffs have preserved their right to argue that a finding that R.S. 39:562 is unconstitutional requires invalidating the election and prohibits the issuance of any bonds, for the reason that the election was held pursuant to the authority of an unconstitutional statute. We address this argument later in the opinion, and conclude that a finding that the statute, as amended in 1980, is unconstitutional does not require overturning the results of the election or enjoining the issuance of any bonds.
[4] As amended by Act 375 of 1979, R.S. 39:562(C) & (D) read in pertinent part as follows:

C. Provided, however, the governing authority of parishwide school districts and of special school districts, including the city school boards of the cities of Bogalusa and Monroe, which cities shall be treated as special school districts, may incur debt and issue bonds therefor for the purposes set out in R.S. 39:554 which, including the existing bonded debt of such subdivision for such purposes, may exceed ten percentum but shall not exceed thirty-five percentum of the assessed valuation of the taxable property of such subdivision....
(D) Provided, however, the governing authority of the parishwide school districts and of special school districts in the Parishes of DeSoto, Red River and Sabine may incur debt and issue bonds therefor for the purposes set out in R.S. 39:554 which, including the existing bonded debt of such subdivision for such purposes, may exceed ten percentum but shall not exceed thirty-five percentum of the assessed valuation of the taxable property of such subdivision....
[5] The redundancy between Paragraphs C and D appears to be the result of the fact that Act 375 was amended a number of times before it was approved by the Legislature. As originally proposed, the 1979 amendment contained no reference to DeSoto, Red River and Sabine Parishes. House Bill 172, which ultimately became Act 375 of 1979, proposed in its initial form to simply raise the bonded indebtedness limit for school districts from 25 percent to 30 percent. Otherwise, the language of R.S. 39:562 as it then existed was retained. However, before House Bill 172 was passed by the House of Representatives, it was amended ten times, six times by the House Ways and Means Committee and four times on the House floor. When the bill left the House Ways and Means Committee, Paragraph C thereof provided for a 25 percent bond limit for school districts, and Paragraph D specified a 35 percent limitation for DeSoto, Red River and Sabine Parish. However, the House adopted a floor amendment which raised the bond ceiling in Paragraph C (for all school districts) to 35 percent. The bill was then passed by the House of Representatives, and approved in the same form by the Senate.
[6] In pertinent part, the text of Act 103 of 1980 was as follows:

AN ACT
To amend and reenact Subsections C and D of Section 562 of Title 39 of the Louisiana Revised Statutes of 1950, relative to the limit of indebtedness authorized to be incurred by certain political subdivisions of the state, to increase said limit for school districts in Livingston Parish to thirty-five percentum of the assessed valuation of the taxable property of the district, and otherwise to provide with respect thereto.
Notice of intention to introduce this Act has been published as provided by Article III, Section 13 of the Constitution of Louisiana.
Be it enacted by the Legislature of Louisiana:
Section 1. Subsections C and D of Section 562 of Title 39 of the Louisiana Revised Statutes of 1950 are hereby amended and reenacted to read as follows:
§ 562. Limit of indebtedness
* * * * * *
C. Notwithstanding any contrary provision of this Section or of any other law, the governing authority of parishwide school districts and of special school districts ... may incur debt and issue bonds therefor for the purposes set out in R.S. 39:554 which, including the existing bonded debt of the subdivision for such purposes, may exceed ten percentum but shall not exceed twenty-five percentum of the assessed valuation of the taxable property of such subdivision....
D. Notwithstanding any contrary provision of this Section or of any other law, the governing authority of the parishwide school districts and of special school districts in the parishes of DeSoto, Livingston, Red River and Sabine may incur debt and issue bonds therefor for the purposes set out in R.S. 39:554 which, including the existing bonded debt of such subdivision for such purposes, may exceed ten percentum but shall not exceed thirty-five percentum of the assessed valuation of the taxable property of such subdivision....
R.S. 39:562 has been amended in two other respects which are worth mentioning here. Act 546 of 1980 added school district 27 of Calcasieu Parish to the list of districts specified in Paragraph D of the statute. This amendment was redesignated as Paragraph F on the authority of La.R.S. 24:253. Act 221 of 1987 deleted Red River Parish from Paragraph D of the statute.