MARVIN, Judge.
In this action under R.S. 13:5121 brought by the plaintiff landowners in DeSoto School District No. 2, the lower court declared invalid an election held in the school district on April 7, 1979, and enjoined the School Board from incurring the debt, issuing the bonds and levying the tax, as the voters had approved in the election. This appeal was given preference as section 5128 of the statute requires. We reverse.
Two propositions were submitted to and approved by the voters, which are reproduced here in part with our emphasis:
PROPOSITION NO. I[1]
“Shall School District No. 2 . . .incur debt and issue bonds to the amount of $1,500,000 to run twenty-five (25) years from the date thereof, with interest at a rate not exceeding eight percent (8%) per annum, for the purpose of . improving school buildings and other school related facilities within . . . said School District . . which bonds will be general obligations of the said District and will be payable from ad valo-rem taxes to be levied and collected within the District as authorized by Article 6, Section 33 of the Louisiana Constitution of 1974 . . .?”
PROPOSITION NO. 2
“Shall School District No. 2 . . .be authorized to levy a tax of one hundred *250 fifty (150) mills on the dollar of assessed valuation on all property subject to taxation in the said School District, for a period of twenty-five (25) years, beginning with the year 1979, with the object and purpose of acquiring and improving schoolhouses and other school facilities, constituting works of public improvement within and for said School District?”
The lower court found that proposition one was invalid because it would allow the School Board to exceed the 25 percent debt limitation statutorily imposed by R.S. 39:562, and that proposition two was also invalid because the School Board contemplated the tax which the voters authorized would be used to retire the bonds authorized by proposition one. The lower court found that R.S. 17:98 limited a school district from levying such taxes for more than 10 years.[2] We must respectfully disagree with these findings.
On the basis of testimony of school officials and the parish tax assessor, the lower court concluded that the delivery date of the bonds of school district two would be “no later than 1980, at which time, the amount of the bonds authorized by proposition one” would exceed the statutory debt limitation. Even assuming that this conclusion is correct, the amount of bonds which the voters of a school district may authorize the school district to issue is not controlling. Proposition one merely authorizes the school board to incur debt and issue general obligation bonds up to the amount of $1,500,000. The time when and if the school board actually incurs the debt and issues or delivers bonds to the purchaser is the crucial time at which the debt limitation of R.S. 39:562 is to be determined, and we cannot presume that school board officials will violate the limitation, especially in view of the penalty of R.S. 39:572.
Proposition one authorizes the issuance of bonds. When and if such bonds are issued, the governing authority of a political subdivision, by operation of law and without any further formality, pledges its faith and credit to the payment of such bonds. Art. 6 § 33, La. Constitution, in footnote 1. This section of the constitution requires that the governing authority “shall levy and collect ... ad valorem taxes sufficient to pay . . . such bonds as they mature.” There can be no clearer or no more compelling mandate: If general obligation bonds are properly authorized by the electorate of a political subdivision and subject to the approval of the State Bond Commission, the governing authority shall levy and collect ad valorem taxes sufficient to pay the bonds. A vote of the electorate on whether an ad valorem tax is to be levied for this purpose is not required and apparently may not be permitted.
General obligation bonds secured by ad valorem taxes which go into the general fund of the political subdivision are but one method of financing public improvements. See Watkins v. Ouachita Parish School Board, 173 La. 259, 136 So. 591 (1931). Another obvious method is provided in Art. 6 § 32 of the Constitution:
“For the purpose of acquiring, constructing, improving, maintaining, or operating any work of public improvement, a political subdivision may levy special taxes when authorized by a majority of the electors in the political subdivision who vote thereon in an election held for that purpose.”
Proceeds from such a tax may not be placed in the general fund of the political subdivision, but must be used for the special purpose for which the tax was authorized. See Gauthier v. Parish School *251 Board, 165 La. 256, 115 So. 479 (1928). The constitution does not limit the amount of special taxes which the electorate may authorize a school district to levy. R.S. 17:98, quoted supra, does provide that a school board may borrow the amount of the anticipated special tax for a ten-year period and issue certificates of indebtedness on special taxes which have been voted to run for a period not exceeding 10 years. This section, however, does not expressly prevent the electorate from authorizing the levy of a special tax for more than 10 years. It limits to 10 years the length of time that certificates of indebtedness of a school board may be issued which are secured by the proceeds of a special tax. Where the constitution authorizes a public body to act in a given area and authorizes the legislature to limit the extent to which the public body may act, the statutory limitation which may result shall not be extended by implication or analogy but shall be strictly construed.
The judgment below does not enjoin the school board from issuing certificates of indebtedness and we do not reach the question as to what and for what terms and conditions certificates of indebtedness may be issued by the defendant school board in anticipation of the proceeds of the tax authorized by the electorate of school district two in proposition two. It should be noted that “bonds” of a political subdivision, as contrasted to certificates of indebtedness, may be issued to run for as many as 40 years. R.S. 39:563.
SUMMARY AND DECREE
Proposition One authorizes the issuance of general obligation bonds under Art. 6 § 33, La.Constitution.
Proposition Two authorizes the School Board to levy a special tax for a period of 25 years under Art. 6 § 32, La.Constitution.
R.S. 17:98 relates to certificates of indebtedness. Art. 6 § 32, La.Constitution, refers to special taxes. Neither relates to general obligation bonds.
If otherwise properly approved and authorized, general obligation bonds may run for not more than 40 years (R.S. 39:563) and the governing body of a political subdivision is constitutionally compelled to levy ad va-lorem taxes in an amount sufficient to pay such bonds as they mature (Art. 6 § 33(B), La.Constitution), notwithstanding the absence of a vote by the electorate.
The statutory debt limitation of R.S. 39:562 as to general obligation bonds is to be determined when the bonds are delivered and not before.
The statutory debt limitation of R.S. 17:98 is to be determined when and if the School Board officially acts to issue certificates of indebtedness and not before.
For reasons assigned, the judgment of the lower court is reversed and it is decreed that the election held by School District No. 2 of the Parish of DeSoto on April 7, 1979, is declared to have been valid, legal and enforceable, and the results, properly promulgated approving Propositions No. 1 and No. 2, may be enforced and implemented by proper authorities in accordance with law. All costs of these proceedings, here and below, are assessed against appellees.
REVERSED AND RENDERED.

. Political subdivisions are allowed to issue general obligation bonds and are required to levy and collect ad valorem taxes in an amount sufficient to pay the bonds as they mature. Note Art. 6, § 33 of the Louisiana Constitution, as emphasized:
A. “Subject to approval by the State Bond Commission or its successor, general obligation bonds may be issued only after authorization by a majority of the electors voting on the proposition at an election in the political subdivision issuing the bonds. Bonds to refund outstanding indebtedness at the same or at a lower effective rate of interest, even though payable solely from ad valorem taxes, need not be authorized at an election if the indebtedness refunded is paid or cancelled at the time of the delivery of the refunding bonds, or if money, or securities made eligible for such purpose by law, are deposited in escrow in an adequate amount, with interest, to be utilized solely to retire the refunded indebtedness or bonds and to pay interest thereon and redemption premiums, if any, to the time of retirement.
B. “The full faith and credit of a political subdivision is hereby pledged to the payment of general obligation bonds issued by it under this constitution or the state or proceedings pursuant to which they are issued. The governing authority of the issuing political subdivision shall levy and collect or cause to be levied and collected on all taxable property in the political subdivision ad valorem taxes sufficient to pay principal and interest and redemption premiums, if any, on such bonds as they mature.”
See also R.S. 39:569.
Art. 6, § 34, La.Constitution, authorizes the legislature to limit by law the amount of ad valorem-tax-bonded indebtedness a political subdivision may incur. R.S. 39:562 provides such a limitation, reading in part, also with our emphasis:
. . school districts . . may incur debt and issue bonds . . . not [to] exceed twenty-five per centum of the assessed valuation of the taxable property of said subdivision . . to be ascertained by the last assessment . . previous to delivery of the bonds . regardless of the date of the election at which said bonds shall have been voted."

. “Whenever the qualified electors of any parish of a school district, acting under authority of Article VI, Section 32 of the Louisiana Constitution of 1974, or Article 10, Section 10, of the Louisiana Constitution of 1921 vote a special tax to run for a period not to exceed ten years for the purpose of constructing or improving schoolhouses and other school facilities, the school board of such parish or school district may borrow the amount of the anticipated tax for a period not to exceed ten years and issue certificates of indebtedness bearing interest at a rate not exceeding eight percent, and dedicating the avails of the tax funded for the period of time the tax is to run.”