528 So.2d 567 (1988)
CONCERNED BUSINESS AND PROPERTY OWNERS OF DeSOTO, INC., et al., Plaintiffs-Appellants,
v.
DeSOTO PARISH SCHOOL BOARD, Defendant-Appellee.
Nos. 20,059-CA, 20,060-CA.
Court of Appeal of Louisiana, Second Circuit.
April 25, 1988.
*568 Nelson, Hammons & Johnson by Walter D. White, Walter F. Johnson, III, Shreveport, Leslie B. Bagley & Assoc., Ltd. by Leslie B. Bagley, Mansfield, for plaintiffs-appellants.
Ward and Hammonds by John F. Ward, Jr., Baton Rouge, Don M. Burkett, Dist. Atty. by Robert E. Plummer, Many, for defendant-appellee.
William J. Guste, Jr., Atty. Gen. by William M. Cady, III, Shreveport, for respondent State.
Before MARVIN, SEXTON and NORRIS, JJ.
SEXTON, Judge.

FACTS
The present appeal arises as a result of two suits filed by plaintiffs opposing the legality of actions of the DeSoto Parish School Board involving two propositions submitted to the voters in a general election held October 24, 1987 in DeSoto Parish. Plaintiffs are voters of DeSoto Parish who have joined together to form Concerned Business and Property Owners of DeSoto, Inc., a Louisiana corporation, as well as certain individual plaintiffs. The election was held for the purpose of authorizing a parishwide ad valorem property tax (Proposition No. 1) and the issuance of bonds in School Districts 1, 3, 4 and 5 of DeSoto Parish for the purpose of constructing schools or renovating existing schools (Proposition No. 2). Proposition No. 1 passed parishwide but Proposition No. 2 was approved by only School Districts 4 and 5. We reverse in part and render, and affirm in part.
The first suit requested the overturning of the election pursuant to the provisions of Title 18, and made various claims of pre-election misconduct on the part of the school board members and others including violations of the open meeting law, use of public funds for advertising in support of a tax proposition and public misrepresentations relative to the effect of the passage of the proposal. The trial judge sustained an exception of no cause of action relevant to the Title 18 claims. Plaintiffs appealed pursuant to the expedited appellate procedure provided for in Title 18:1409. This court affirmed that decision in the following per curiam opinion:
We hold the trial court did not err in concluding that plaintiffs had not stated a cause of action under Election Code, LSA-R.S. 18:1401, et seq. We reverse ruling on plaintiffs' cause of action under Art. 6 § 35, LSA Constitution and particularly the constitutionality of LSA-R.S. 39:562 (D & F).
*569 Therefore, the only issues before us in the instant appeal are those raised by the second suit filed in the trial court. This suit questioned the constitutionality of LSA-R.S. 39:562 D and F as "local and special laws." They also asserted that the election should be declared invalid as it pertains to both Proposition No. 1, a parishwide ad valorem tax, and Proposition No. 2, the bond proposition.
They alleged pre-election misrepresentations made by the school board, violations of the open meeting law, and the use of public funds for the advertisement and dissemination of misleading information. Appellants also argued that the asserted unconstitutionality of Proposition No. 2 extended to Proposition No. 1, the requested ad valorem tax, as the tax in reality was to be used for the operation of new schools which were to be built from the issuance of the bond. They therefore argued that as a result, Proposition No. 1 was "tainted" by the asserted unconstitutionality of Proposition No. 2. The trial judge thereafter rendered a judgment rejecting plaintiffs' demands on April 12, 1988.

PROPOSITION NO. 1 and VALIDITY OF ELECTION
We first address appellants' contentions concerning the invalidity of the October 24, 1987 election. Courts will not entertain election contests unless it is shown that the matters complained of would have changed the result of the election. State ex rel Burg v. Folse, Orl.La. App.1944, 17 So.2d 32. Additionally, courts are loathe to thwart the result of an election and will change that result only for grave and sufficient reasons. Newsom v. Temple, 66 So.2d 357 (La.App. 1st Cir. 1953); Courtney v. Singleton, 27 So.2d 448 (La.App. 1st Cir.1946). The burden is on one claiming that the affirmative result of a bond issue election was affected by a misleading statement in the notice of election amounting to no more than an irregularity, to establish that the result of the election was affected by such statement. 64 Am.Jur.2d, Public Securities and Obligations, § 138 at 182.
The only Louisiana jurisprudence we have located dealing with alleged broken or misleading promises is Williams v. Police Jury of Concordia Parish, 160 La. 325, 107 So. 126 (1926). In Williams, the plaintiff alleged that the police jury of Concordia parish, as well as proponents of a bond issue, made promises that from proceeds of the bond a gravel highway would be built through the tenth ward of the parish. The road was not built, however. Plaintiff sued to enjoin the parish from issuing the bonds and to restrain certain police jury members from acting. The allegation of unlawful promises was asserted as a basis for the injunction. The Supreme Court in addressing the issue of pre-election promises pointed out that the alleged breach of promises by elected officials "is to be reckoned with at the ballot box and not in the courts of this state." Williams v. Police Jury of Concordia Parish, supra, 107 So. at 129.
Any statements made by individual members of the school board prior to the election cannot be said to be "official conduct" on the part of the entire school board. Also, as the Supreme Court noted in Williams, complaints in that regard are best addressed at the ballot box. Further, there is no proof that the irregularities complained of did in fact change the result of the election. Plaintiffs' proof in this regard is meager at best.
Plaintiffs' complaint that the school board violated the open meeting law is likewise meritless. Any attack on the open meeting law must be brought within sixty days. LSA-R.S. 42:9. Plaintiffs did not specify the meeting or meetings and the dates thereof that they assert violate the open meeting law. Plaintiffs' contention that public funds were improperly used to advertise the effects of the election in a misleading fashion is also without merit. The misuse of public funds is a criminal matter and is addressed by criminal penalties. LSA-R.S. 18:1465.
Appellants' argument which attempts to tie the ad valorem tax to the bond proposition is likewise meritless. The ad valorem proposition was voted upon parishwide. *570 The bond proposition in question, however, was voted on in four of the five school districts of DeSoto Parish and in fact was passed in only two of these districts. As a result, all citizens of DeSoto parish are subject to the ad valorem tax regardless of whether or not the bond proposition passed in their individual school district. This result demonstrates the separateness of the proposals. Appellants' attempt to tie the two propositions together is misplaced.
We thus determine that the election should not be disturbed on the basis of arguments of the plaintiffs addressed here, and we further determine that Proposition No. 1 is valid as a separate and distinct proposition.

PROPOSITION NO. 2CONSTITUTIONALITY
We next proceed to the only serious issue in this caseappellants' attack on the constitutionality of the statutory authority for bonded indebtedness of school districts. The appellants contend that Proposition No. 2 is invalid because it was passed pursuant to a local or special law contrary to LSA-Const. Art. 3, § 12.[1]
That section provides in pertinent part:
(A) Prohibitions. Except as otherwise provided in this constitution, the legislature shall not pass a local or special law:
. . . .
(8) Regulating the management of parish or city public schools, the building or repairing of parish or city schoolhouses, and the raising of money for such purposes....
(B) Additional Prohibition. The legislature shall not indirectly enact special or local laws by the partial repeal or suspension of a general law.
The defendant school board asserts that we should not consider the constitutional issue because it is "premature" under our decision in Howe v. DeSoto Parish School Board, 373 So.2d 248 (La.App. 2d Cir.1979), writ denied, 375 So.2d 379 (La.1979).
The trial court in Howe invalidated a tax election and enjoined the board from levying the tax and issuing bonds on the grounds that the tax exceeded the statutory twenty-five percent limitation imposed by LSA-R.S. 39:562. We reversed, holding that the attack upon the election was premature because the statutory limitation "is to be determined when the bonds are delivered." The constitutionality of LSA-R.S. 39:562 was not raised or considered in Howe as it is here.
We, therefore, find that Howe is not controlling and proceed to consider the effect of LSA-Const. Art. 3, § 12, and Art. 6, § 35. Section (A) of Art. 6, § 35 provides that no cause or right of action to contest the "regularity, formality, or legality" of a "tax election or bond authorization" may be heard more than sixty days after the election. Moreover, Section (B) provides that every ordinance or resolution authorizing the issuance of bonds must be published at least once in the official journal for the subdivision, and limits the right to contest the legality of the ordinance or resolution to thirty days only.
Both Sections (A) and (B) of LSA-Const. Art. 6, § 35 provide that after the delays imposed therein, no one has a right to contest the election or resolution "for any cause whatsoever." Section (B) further provides:
Thereafter, it shall be conclusively presumed that every legal requirement for the issuance of the bonds or other debt obligation, including all things pertaining to the election, if any, at which the bonds or other debt obligations were authorized, has been complied with. No court shall have authority to inquire into any of these matters after the thirty days.

LSA-Const. Art. 6, § 35(B), (emphasis ours).
We thus believe that the aforesaid constitutional provisions clearly mandate that any attack on the value of the bonds or the *571 debt limit created thereby must be made within the time limits imposed in those provisions. The determination in Howe that the appropriate remedy is a later suit to enjoin the sale of bonds to the extent they exceed the authorized debt limit is contrary to LSA-Const. Art. 6, § 35.
It is therefore necessary that we consider appellants' constitutional attack on LSA-R.S. 39:562 D and F. Section D provides that the parishes of DeSoto, Livingston and Sabine may incur debt and issue bonds for school district purposes up to thirty-five percent of the assessed valuation of the taxable property of the parish or special school district involved.
Section F renders the very same authority again to the parishes of DeSoto and Sabine, and adds School District 27 of Calcasieu Parish.
Plaintiffs thus contend that because Section C of LSA-39:562, which covers all parishwide school districts and special school districts in the state, limits the bond indebtedness of any particular subdivision to twenty-five percent of assessed valuation, the thirty-five percent limit of Sections D and F is unconstitutional as a special or local law.
An understanding of the legislative history of LSA-R.S. 39:562 is necessary to a consideration of plaintiffs' claims. This was a relatively simple one-paragraph statute limiting bonded indebtedness of political subdivisions throughout the state to twenty-five percent of assessed valuation.[2]
Act No. 375 of 1979 amended and reenacted this statute. Section C thereof gave all parishwide and special school districts the authority to incur bonded indebtedness up to thirty-five percent of assessed valuation. Also Section D of the act gave that same authority to parishwide and special school districts in the parishes of DeSoto, Red River and Sabine.[3] Obviously, we have no idea why these parishes received this redundant authority.
The next year, by Act 103 of 1980, the statute was again amended. Section C was changed to reduce the assessment limit statewide from thirty-five percent to twenty-five percent. However, the thirty-five percent limit in Section D was not changed. Therefore, the limit over all of the state except the enumerated parishes was twenty-five percent, thus generating the instant attack.[4]
It should be noted that Act 546 of 1980 also amended Section D. That amendment was relatively insignificant. It slightly changed the semantics of the initiatory wording of the section and added School District 27 of Calcasieu Parish. This amendment was redesignated as Section F, Section 562, on the authority of LSA-R.S. 24:253. Thus, for all practical purposes, Sections D and F are identical sections granting the same thirty-five percent authority to the parishes of DeSoto, Livingston and Sabine and School District 27 of Calcasieu parish.[5]
Defendants contend that these special provisions for the noted parishes are not special and local laws, citing Davenport v. Hardy, 349 So.2d 858 (La.1977); Knapp v. Jefferson-Plaquemines Drainage District, 224 La. 105, 68 So.2d 774 (1953); State ex rel Grosch v. City of New Orleans, 211 La. *572 241, 29 So.2d 778 (La.1947). Kotch v. Board of River Port Pilot Commissioners for Port of New Orleans, 209 La. 737, 25 So.2d 527 (1946), affirmed 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947), reh'g denied, 331 U.S. 864, 67 S.Ct. 1196, 91 L.Ed. 1869 (1947); State ex rel Porterie v. Smith, 184 La. 263, 166 So. 72 (1935). We note that all but one of these cases were decided prior to the constitution of 1974. Davenport v. Hardy was decided in 1977. The principal constitutional issue in Davenport v. Hardy was whether advertisement was necessary as required by LSA-Const. Art. 3, § 13 under the circumstances of that case. However, the primary holding was that the purpose of the act was to conform the terms of office and time of the election of the two constables involved "to the terms of office and the time of election of practically all of the constables in Louisiana." Davenport v. Hardy, supra, at 860. Thus, it was held not to be a special or local law.
A statute is a local or special law if its restrictions can operate upon or affect only a portion of the citizens or a fraction of the property embraced within the classification created, while a general law is one which operates equally and uniformly upon all persons brought within the relations and circumstances for which it provides or operates equally upon all of a designated class, founded upon a reasonable and proper classification.
State v. Labauve, 359 So.2d 181, 182 (La. 1978).
State v. Labauve is further instructive on the question.
When the operation of a law is limited to certain parishes, it is suspect as a local or special law. If its operation is so limited solely through the effect of a reasonable general classification (such as population size or physical characteristics), the law should not be considered within the prohibition of Art. 3, Section 12(A). See Johnson, Legislative Process, 36 La.L.Rev. 549 (1976); cf. Nomey v. State, 315 So.2d 709 (La.1975). However, if its operation is limited solely by its specific designation of certain parishes, it must be considered a local law violative of our constitution.

State v. Labauve, at 183 (emphasis ours).
The citation of Nomey v. State, 315 So.2d 709 (La.1975), is also instructive. Nomey declared unconstitutional a statute passed in 1974 (before the effective date of the current constitution) which allowed certain specified parishes to prohibit the sale of beverages containing 3.2% alcohol in those parishes on an equal protection basis.
As a result of the statutory scheme involved here, it is apparent to us that Sections D and F of LSA-R.S. 39:562 are an indirect enactment of a special or a local law by the partial repeal or suspension of the general law in direct contravention of LSA-Const. Art. 3, § 12(B).
These sections single out only the citizens in the parishes enumerated as being subject to a bonded debt limit which is higher than that imposed on citizens throughout the state. Unquestionably, citizens of those parishes have been made "less equal" by the series of legislative enactments which have caused their assessment limit to exceed those of other citizens of the state.
The defendants contend that Act 103 of 1980 created the instant mischief by reducing the statewide limit to twenty-five percent and leaving the thirty-five percent limit in place for the selected parishes listed in Section D. They therefore argue that the whole act is unconstitutional. We disagree.
We can only speculate why Act 375 of 1979 singled out certain parishes for redundant treatment. Section D thereof, it will be recalled, rendered the same authority to these parishes that Section C gave the whole state. However, in our view, it is the redundant Section D of Act 375 of 1979 that is the villian. Whatever the purpose of the original redundancy of Act 375 of 1979, the result is special treatment for the listed parishes. Thus, if we were to declare the entirety of Act 103 of 1980 unconstitutional, we would be giving meaning to the original redundancy. We believe that *573 this circumstance is just such an indirect enactment of a special law that Art. 3 of Section 12 of the Constitution intended to prohibit.
More importantly, the twenty-five percent limit of Section C of Act 103 of 1980 is the latest expression of the legislative will as to the bonded debt limitation for the entire state. We are constrained to thus strike only the offending portions of the statute and validate the latest expression of the legislative will as to the appropriate statewide bonded school district indebtedness. LSA-R.S. 24:175; State v. Brown, 389 So.2d 48 (La.1980); State ex rel Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477 (1949).
In summary, we determine that plaintiffs' attack is appropriate under LSA-Const. Art. 6, § 35. We further find the challenged sections, LSA-R.S. 39:562 D and F to be unconstitutional as special and local laws.
However, we decline to invalidate the election and the ordinances passed pursuant thereto in their entirety. The unconstitutionality of the sections at issue does not affect Section C of LSA-R.S. 39:562 which provides for a debt limitation of twenty-five percent. Therefore, we will not accede to plaintiffs' further request that the sale of all the bonds be enjoined, but rather we will preclude the sale of any bonds which exceed the twenty-five percent debt limitation of LSA-R.S. 39:562 C.

DECREE
Premises considered, there is therefore judgment herein in favor of the plaintiffs, Concerned Business and Property Owners of DeSoto Parish, Inc., Ann C. Britton, Vergie Ashton, Sandra L. Calhoun, John Neilson, Dr. Jack Grindle, and against defendant, DeSoto Parish School Board, enjoining and prohibiting the defendant from incurring debt and issuing bonds therefor in an amount over twenty-five percent (25%) of the assessed valuation of the taxable property of School Districts 4 and 5, in accordance with the provisions LSA-R.S. 39:562 C.
In all other respects, the judgment of the trial court rejecting the demands of plaintiffs is affirmed.
The costs of this litigation are assessed against the defendant insofar as it is legal to do so.
REVERSED IN PART AND RENDERED, AND AFFIRMED IN PART.
NOTES
[1] Plaintiffs also complain about the lack of advertisement of the amendment to LSA-R.S. 39:562 which they contend is necessary under LSA-Const. Art. 3, § 13. Our disposition per Section 12 makes a consideration of that issue unnecessary.
[2] The statute was relatively unchanged from 1955 until the amendment by Act 375 of 1979.
[3] Section D of Act 375 of 1979 reads as follows:

D. Provided, however, the governing authority of the parishwide school districts and of special school districts in the parishes of DeSoto, Red River and Sabine may incur debt and issue bonds therefor for the purposes set out in R.S. 39:554 which, including the existing bonded debt of such subdivision for such purposes, may exceed ten percentum but shall not exceed thirty-five percentum of the assessed valuation of the taxable property of such subdivision, including both (1) homestead exempt property, which shall be included on the assessment roll for the purposes of calculating debt limitation, and (2) nonexempt property, as ascertained by the last assessment for the parish for local purposes prior to delivery of the bonds representing such debt, regardless of the date of the election at which said bonds were approved.
[4] Section D was also amended by this act, but only to add Livingston Parish to the parishes of DeSoto, Red River and Sabine having special statutory authority.
[5] Act 221 of 1987 deleted Red River Parish from the special sections of the statute.