GASKINS, J.
|! This appeal arises from an action contesting an April 21, 2012, election on propositions submitted to the voters of Bossier Parish for the issuance of bonds and the levying of property tax millages for the parishwide school district. The bond proposition passed; the proposed tax mil-lages were rejected. The plaintiffs, John E. Settle, Jr., BIKE, L.L.C., and Kathy Condon, then sought to void the election. The trial court denied the plaintiffs’ petition and upheld the election. We affirm, concluding like the trial court, that the actions taken in this case are not irregularities or fraud in the conduct of the election that would require nullification.
*1286 FACTS
The plaintiffs’ petition, relying on La. Const, art. 11, § 4, which prohibits the use of public funds to urge any elector to vote for or against any candidate or proposition, alleged that the Bossier Parish School Board (“BPSB”) conducted unlawful activities in the “promotion” of the propositions. Paragraph 22 of the petition included the following allegations (verbatim):
[[Image here]]
(3) utilization of BPSB employees to send emails to parents regarding bond and tax election through “school loops”;
(4) utilization of BPSB employees to promote the election by urging (if not requiring) that they vote and solicit votes from friends, families, and organizations;
[[Image here]]
(6) advising the public through the media as well as the emails and mailings, that passages and the “tax renewal” would not be new taxes.[1]
Paragraph 25 of the petition asserted that the information distributed failed to advise the public that “almost all immovable property in Bossier Parish is to be |2reassessed in 2012 as per state law and that most residences would be reassessed at a higher value.”
Paragraphs 26-28 alleged that the language on the ballot for the tax proposition was false and misleading, that BPSB was seeking authority to sell new bonds and incur new debt, that the language on the ballot was for the passage of $210,000,000 of General Obligation Bonds, and not for a “tax renewal” as advertised, and that the ballot proposal stated the bonds would be payable from ad valorem taxes with no estimated increase in the millage rate to be levied in the first year of the issue above the 13.55 mills currently being levied.
As to the allegations concerning the circulating of false and misleading information about the propositions, the court first quoted from Concerned Business and Property Owners of DeSoto, Inc. v. DeSoto Parish School Board, 528 So.2d 567 (La.App. 2d Cir.1988), reversed on other grounds, 531 So.2d 436 (La.1988), “[c]ourts will not entertain election contests unless it is shown that the matters complained of would have changed the result of the election. ... Additionally, courts are loathe to thwart the result of an election and will change that result only for grave and sufficient reasons.” The trial court, citing Adkins v. Huckabay, 1999-3605 (La.2/25/00), 755 So.2d 206, restated the burden of proof and noted that the plaintiffs’ were required to show that because of fraud or irregularities, the outcome of the election either would have been different, or would have been impossible to determine.
The trial court found that the representations made by BPSB about the millages and the cost of the bond proposal were factually correct, that the evidence did not indicate that BPSB intentionally misled voters into believing that the bond proposition would not increase taxes, that there was no evidence BPSB had deliberately misrepresented or suppressed the fact that properties in Bossier Parish |swere scheduled to be reassessed in 2012, and that no evidence was set forth that would indicate the results of the election would have been any different had any alleged irregularities been rectified. Finally, the court held that the language of the proposition complied with statutory requirements.
*1287 Finding that the plaintiffs failed to carry their burden of proof on fraud, and that the bond proposal strictly complied with Louisiana law, the trial court refused to overturn the election of April 21, 2012. For the following reasons, we hold that the trial court correctly refused to void the election on the basis of the alleged dissemination of false and misleading information.
On appeal, the appellants essentially assert that the trial court erred in finding the absence of fraud or irregularities on the part of BPSB, and that the trial court failed to apply the correct burden of proof as set forth in Adkins v. Huckabay, supra.
The provisions of La. R.S. 18:1401(0 state:
A person in interest may bring an action contesting any election in which any proposition is submitted to the voters if he alleges that except for irregularities or fraud in the conduct of an election the result would have been different. [Our emphasis.]
Except for the allegations concerning the language on the ballot, plaintiffs’ petition, as well as the evidence submitted at trial, focused solely on: (1) the alleged illegal use of public funds and resources by BPSB to promote passage of the proposition; and (2) the truthfulness of information disseminated by and on behalf of BPSB in that regard.
La. Const, art. 11, § 4 addresses the prohibited and allowed use of public funds in an election for a proposition:
No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This provisions shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot.
| .¡This constitutional article is restated in La. R.S. 18:1465, and provides for a criminal penalty for prohibited actions.
On February 1, 2012, the school board disseminated a communication to the Bossier schools to be included on their website, entitled “Grow With Us.” Pertinent excerpts from that document include the following:
Bossier Schools must continue to move forward, not slip backward — which is why we urge you, the stakeholders of our parish, to vote “yes” to the bond referendum we will be seeking April 21. This construction bond is a continuation of the 13.55 mills being currently levied in Bossier Parish and will not raise property taxes. Your continued support, however, will generate funds needed to build new schools where warranted and renovate those in need of improvements.
The school board was advised that some of its promotional activities might be in violation of the law with respect to expenditure of public funds, and urging electors to vote; by February 17, 2012, the language urging the vote was omitted from this website communication. This “urging to vote” language was only on the websites a maximum of 17 days, and was taken down two months prior to the election. While arguably this may have violated the use of public funds prohibition in urging the vote for the proposition, it was insubstantial and too remote in time to affect the outcome of the election. Additionally, the school board presented testimony that a private entity had paid for some of the proposition promotions.
Two days before the election, the principals were sent a letter to put on their websites and to send electronically to parents, which included the following:
This is all possible at no increased cost to taxpayers. The parishwide construe *1288 tion bond proposition on the April 21 ballot would simply enable Bossier Schools to restructure and reallocate the current 13.55 millage to sell bonds to fund these improvements and meet the growth and renovation needs.
The language of the bond proposition that was placed on the ballot stated:
IfiParishwide Proposition (School District) (Bond)
Summary: To authorize not exceeding $210,000,000 of not exceeding 20 year General Obligation Bonds of Parishwide School District of the Parish of Bossier, State of Louisiana, for the purpose of acquiring and/or improving lands for building sites and playgrounds, including construction of necessary sidewalks and streets adjacent thereto; purchasing, erecting and/or improving school buildings and other school related facilities within and for the District and acquiring the necessary equipment and furnishings therefore, and refunding and extending outstanding certificates of indebtedness.
Shall Parishwide School District of the Parish of Bossier, State of Louisiana (the “District”), incur debt and issue in series from time to time not exceeding, Two Hundred Ten Million Dollars ($210,000,000) of general obligation bonds to run not exceeding twenty (20) years from date thereof, with interest at a rate or rates not exceeding nine per centum (9%) per annum, to be sold at par, premium or discount, approximately $202,500,000 of which bonds to be issued for the purpose of acquiring and/or improving lands for building sites and playgrounds, including construction of necessary sidewalks and streets adjacent thereto; purchasing, erecting and/or improving school buildings, and other school related facilities within and for the District and acquiring the necessary equipment and furnishings therefor, title to which shall be in the public, and approximately $7,500,000 of which bonds to be issued for refunding and extending the outstanding Certificates of Indebtedness, Series 2008, of the Parish School Board of the Parish of Bossier, State of Louisiana; all of which bonds will be general obligations of the District and will be payable from ad valorem taxes to be levied and collected in the manner provided by Article VI, Section 33 of the Constitution of the State of Louisiana of 1974 and statutory authority supplemental thereto, with no estimated increase in the millage rate to be levied in the first year of issue above the 13.55 mills currently being levied to pay General Obligation Bonds of the District?
Trial testimony, particularly that of David Scott Hughes, executive director of the Alliance for Education, revealed that the basis of plaintiffs’ claims of false and misleading information focused on the claim that the bond proposition would not raise property taxes. Hughes explained that the current 13.55 millage would have expired when the already existing bonds were paid off, and that by asking for a new construction bond of 13.55 mills, “you’re actually asking for the right to extend out the tax another 20 to 25 more years. So, in effect, yes, if you’re a taxpayer expecting that millage to go off the books, this would be a new tax going on the books.” He continued, “The fact that it would be the same amount I think in many people’s minds might imply that they’re not going up, but in effect they would go to zero one day and go back up the next day and that would be an increase in taxes.”
The plaintiffs also alleged that the school board’s information about no tax increase was false because property was *1289 scheduled to be reassessed in 2012. Testimony of the Bossier Parish Tax Assessor, Bobby W. Edmiston, indicated there would be a reassessment in 2012, and that he estimated a two to four percent increase in the value of residential property; on the other hand, he did not foresee an increase in value of business property, and perhaps a decrease overall. He did not expect the assessments on racetrack and casino operations to go up.
DISCUSSION
The jurisprudence stops short of holding that allegations concerning pre-election promotion of a proposition or candidate can never state a cause of action under the Election Code. See Concerned Business, supra; Williams v. Police Jury of Concordia Parish, 160 La. 325, 107 So. 126 (1926), and Dupre v. City of Houma, 216 So.2d 576 (La.App. 1st Cir.1968), writ refused, 253 La. 329, 218 So.2d 45 (1969). Instead, the provisions of La. R.S. 18:1401(C) show that the focus of inquiries concerning allegations of fraud and irregularities is on the conduct of the election.
The Louisiana Election Code consists of an elaborate framework of statutes designed to cover every aspect of conducting elections, and includes specific provisions regulating bond and tax elections that address matters from the resolution of a governing authority ordering the election, to the canvassing of the returns. Under this framework, fraud and irregularities in the conduct of an ^election could involve such matters as improper voter registration, exclusion of voters at the polls, receiving illegal votes, tampering with voting machines, mishandling absentee ballots, improper canvassing of the returns, etc. These matters obviously can have a direct impact on the outcome of an election.
Additionally, the trial court correctly concluded that the evidence did not indicate that BPSB intentionally misled voters into believing that the bond proposition would not increase taxes, that there was no evidence BPSB had deliberately misrepresented or suppressed the fact that properties in Bossier Parish were scheduled to be reassessed in 2012, and that no evidence was set forth that would indicate the results of the election would have been any different had any alleged irregularities been rectified. The language used in promoting the proposition was correct in that the current tax millage of 13.55 was not estimated to increase in the year of issue, and no evidence was presented to show that it would increase in the future. Moreover, the scheduled reappraisal was independent of this election; under La. Const, art. 7, § 18, “all property subject to taxation, shall be reappraised and valued in accordance with this section, at intervals of not more than four years.” The tax assessor’s testimony that some assessments were expected to increase, while others were expected to stay the same or decrease, does not aid the plaintiffs in any respect. The description of the 13.55 mills in the language promoting the proposition as “a continuation of the 13.55 mills being currently levied” is accurate.
For the reasons stated, the plaintiffs fell short of meeting their burden of proving that because of fraud or irregularities the outcome of the election either would have been different, or would have been impossible to determine. In this regard, we also note that no witnesses testified that they believed they were misled 18in any way by the school board’s promotion, or that they would have voted differently had they not been influenced by the school board’s promotion.
As for the plaintiffs’ allegation concerning the language on the ballot for the tax proposition, we have examined that language and do not find it either false or *1290 misleading in any respect; like the trial court, we find that the language of the proposition complies with the provisions of La. R.S. 18:1284.
For the foregoing reasons, we affirm the trial court’s decision upholding the election.
ADDITIONAL MATTERS

Recusal of the Trial Judge

The plaintiffs assert on appeal that the trial judge should have recused himself. They point to the judge’s connection to BPSB, and argue that “[i]t would have been a fruitless exercise” to have insisted on a recusal hearing, and request, as an alternative to voiding the election, that due to the nonrecusal, the case be remanded for a new trial before another judge of the 26th Judicial District Court.
The record reveals that on the day of the trial, the plaintiffs filed a motion to recuse Judge Cox on the basis that he was personal and social friends with two school board members, Brad Bockhaus and Mike Mosura. Judge Cox was unaware of the recusal motion until the beginning of the trial proceedings. Judge Cox informed plaintiffs’ attorney that he did not know Brad Bockhaus, to which plaintiffs’ attorney replied, “Anonymous phone calls often are not correct, Your Honor.” On the other hand, Judge Cox readily admitted that he knew Mr. Mosura, decided to hold a pretrial conference, and stated, “And then I’m going to put some things on the record and then I’m probably going to refer it to a recusal hearing.”
After the pretrial conference, the judge announced that he was not going to recuse himself; he then went on to disclose his relationship with Mr. Mosura with | gwhom he had hunted and fished and with whom he went to church. The judge also revealed that Jason Smith, who the judge believed was “over the architectural part of the bond election” was in the judge’s Sunday school class; that the judge’s wife had worked for BPSB in the past; that Bill Kostelka, who had served on the school board in a prior period, was in the Rotary Club with the judge and had a partner who prepared the judge’s financial disclosures for the state; and that when the judge was an assistant district attorney, he was at two school board meetings where he served as an attorney for the school board.
After making these disclosures both in the pretrial conference and in open court, the judge stated that he would let the plaintiffs’ attorney decide if he wished to have a recusal hearing; if so, the judge said he would then set it immediately. However, the plaintiffs’ attorney stated:
Yes, Your Honor, thank you for your disclosure. Your reputation on the bench is impeccable. We anticipate the case will be — proceed probably from this Court to another courtroom and my client has insisted, and rightly so, that our record be complete. I’ve conferred with my client and after full disclosure which was information that had been sent to my office some of which, not all of it, by various people anonymously. We’ve decided we’ll continue with — with you in the case. I do want the motion in the- — for the record, but I’ll waive any hearing and agree to have you hear the case. [Our emphasis.]
The plaintiffs’ attorney made no objection on the record.[2]
*1291 The record reveals no grounds for recu-sation, mandatory or otherwise. La. C.C.P. art. 151. The plaintiffs did not allege that the judge was biased or prejudiced, or interested in the cause or its outcome to such an extent that he would be unable to conduct fair and impartial proceedings. Furthermore, after the judge made a full disclosure and offered to refer the matter for a recusal hearing, the plaintiffs’ attorney praised the judge for his impeccable reputation, waived the | shearing, and agreed to have Judge Cox hear the case. Given these circumstances, the plaintiffs’ recusal argument is merit-less.

No Right of Action

As previously noted, a “person in interest” may bring an action, such as the one herein, contesting an election in which a proposition is submitted to the voters. Although BPSB did not file an exception of no right of action in the trial court, and has not formally filed such an exception in this Court, BPSB asserts at the end of its appellate brief that the plaintiffs did not have a right of action to bring the lawsuit. BPSB points out that the plaintiffs offered no proof that they were registered voters in Bossier Parish and/or that they are taxpayers of immovable property situated in Bossier Parish, and that BPSB denied their allegations of such status in its answer.
Despite BPSB’s failure to file an exception of no right of action, we note that an appellate court can notice the absence of a right of action on its own motion. La. C.C.P. art. 927(B). While the term “person in interest” is not defined in the Election Code, BPSB did admit in its answer that plaintiff, John E. Settle, maintained an office in Bossier Parish. Furthermore, Mr. Settle stated, when questioning Mr. Edmiston, that he owned commercial property at 1915 Citizen’s Bank Drive (the same address as his law office). Mr. Ed-miston responded, “Right.” Mr. Settle then asked if his property would be reassessed in 2012, and Edmiston replied, “That will be reassessed this year.”
Given that BPSB admitted Settle had an office in Bossier Parish, and given that part of the reassessment in 2012 would cover not just business real estate, but business personal property as well, we conclude that sufficient evidence existed to show Settle was a person in interest.
| ^Timeliness of Appeal Bond
We also note that, on the face of the record, the bond for this appeal appears to have been filed late. The provisions of La. R.S. 18:1409(D) state in pertinent part, “Within twenty-four hours after rendition of judgment, a party aggrieved by the judgment may appeal by obtaining an order of appeal and giving bond for a sum fixed by the court to secure the payment of costs.” In this matter, the parties were notified of the trial court judgment at 10:38 a.m. on June 26, 2012. The order of appeal and bond was set at 8:33 a.m. on June 27, 2012. The appeal bond was filed at 2:26 p.m. on June 28, 2012.
While jurisprudence supports the strict implementation of this time limit, there is also jurisprudence that allows extensions of time for the bond filing based upon notions of proper notice and fair play. See Dumas v. Jetson, 446 So.2d 747 (La.App. 1st Cir.1983); Walker v. Rinicker, 29,361 (La.App.2d Cir.9/6/96), 681 So.2d 1; Francois v. Thibodeaux, 2002-1588 (La.6/12/02), 821 So.2d 479. See and compare Burkett v. Lewis, 42,985 (La.App.2d Cir.9/21/07), 966 So.2d 718; Davis v. Malveaux, 2006-2096 (La.App. 1st Cir.10/24/06), 945 So.2d *1292 70. No reasons were presented to explain the apparent late filing of the bond. However, no party has complained that the filing was not timely. Because we affirm the trial court ruling and uphold the election, we pretermit this matter without further investigation.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed at appellants’ costs.
AFFIRMED.

. The petition also contained allegations that public funds were spent to urge voters to vote for the proposition. On this issue, the trial court granted the defendants’ exception of no cause of action. The correctness of this ruling was not cited as error in this appeal.

. Under die Rules of Professional Conduct, once the attorney waived his objection and stated the trial judge’s reputation was impeccable, the attorney should not have and could not, cite the lack of recusal as an error on appeal.