STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-1140


JACQUELINE J. GASPARD

VERSUS

HORACE MANN INSURANCE COMPANY, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20134286
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.


AFFIRMED.

J. Lomax Jordan, Jr.
Victor R. A. Ashy
1817 West University Avenue
Lafayette, LA 70506
(337) 233-9984
COUNSEL FOR PLAINTIFF-APPELLANT:
    Jacqueline J. Gaspard

C. Shannon Hardy
John. W. Penny, Jr.
Penny & Hardy
600 Jefferson Street, Suite 601
Lafayette, LA 70502
(337) 231-1955
COUNSEL FOR DEFENDANT-APPELLEE:
    Allstate Insurance Company

**PICKETT, Judge.**

Insured appeals the trial court's judgment that awarded her damages for injuries she sustained in an automobile accident but denied her claim for penalties and attorney fees for her uninsured motorist insurer's failure to make an unconditional tender under the uninsured motorist coverage provision of her automobile insurance policy. For the reasons discussed below, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

On August 27, 2012, Jacqueline Gaspard's vehicle was rear-ended while she was stopped at a red light. She filed a suit for damages against the drivers and insurers of the two vehicles following her vehicle that were also involved in the accident. She also filed suit against Allstate Insurance Company, her uninsured motorist (UM) insurer, asserting that her damages exceeded the liability coverage of the party or parties who caused the accident. During the course of the litigation, the parties determined that the second vehicle behind Ms. Gaspard was 100% at fault for causing the accident. She settled her claims against that driver and his insurer for $50,000.00, the limits of his liability policy, and dismissed them. She also dismissed her claims against the other driver and his insurer.

Ms. Gaspard reserved her rights against Allstate and proceeded with her claims against it. She submitted demands, which included documentation of her injuries and treatment, to Allstate under *McDill v. Utica Mutual Insurance Company*, 475 So.2d 1085 (La.1985), seeking an unconditional tender under its UM policy. Allstate did not respond to her demands. Ms. Gaspard amended her claim against Allstate to include a claim for penalties and attorney fees under La. R.S. 22:1892 and 22:1973 for its failure to proffer an unconditional tender despite

satisfactory proof that her injuries exceeded the underlying liability policy limits of Allstate's policy.

In August 2016, the trial court set the matter for trial March 13, 2017. In January 2017, an issue arose over whether the matter would be tried as a jury trial or a bench trial. Allstate demanded a jury in its answer, and the trial court signed an order setting a jury bond, as provided in La.Code Civ.P. art. 1734. Neither Allstate nor Ms. Gaspard timely filed a jury bond. After the delay for filing a jury bond lapsed, Ms. Gaspard filed a motion to have the trial court order a cash deposit to secure a jury, as provided in La.Code Civ.P. art. 1734.1, which the trial court granted. Allstate then filed a motion to rescind that order, asserting that Ms. Gaspard had waived the right to a jury trial because she had not posted a jury bond.

On February 2, 2017, the trial court held a status conference at which it heard counsel's arguments concerning Allstate's motion and granted the motion. The matter proceeded as a bench trial from March 13 through March 21, 2017. After Ms. Gaspard rested her case, Allstate moved for a directed verdict on her claims for penalties and attorney fees, which the trial court granted. Allstate then presented its defense. After Allstate rested, the parties presented closing arguments. At the conclusion of the arguments, the trial court rendered its decision in open court and stated oral reasons on the record. The trial court determined that the injuries Ms. Gaspard suffered in the August 2017 accident were an aggravation of injuries that she had suffered in a prior automobile accident on May 4, 2008. The trial court further determined that the aggravation of Ms. Gaspard's prior injuries was resolved by early February 11, 2013. It awarded Ms. Gaspard $3,314.37 in medical expenses and $8,000.00 in general damages.

On April 26, 2017, the trial court signed a judgment that conformed to its oral reasons. Ms. Gaspard filed a motion for new trial. After receiving Allstate's opposition to the motion for new trial, the trial court denied the motion and rescinded its prior order setting the motion for oral argument. On July 21, 2017, Ms. Gaspard filed a motion to recuse the trial judge, which was denied without a hearing. She then appealed the trial court's judgment.

## ASSIGNMENTS OF ERROR

Ms. Gaspard assigns the following errors with the trial court proceeding and judgment:

1. The Trial Court Erred in Granting Defense Motion to Strike the Jury Trial;

2. The Trial Court Erred in Becoming the Finder-of-fact, and Should Have Self-Recused;

3. The Trial Court Erred in Denying Plaintiff's Motion for a New Trial Without a Contradictory Hearing;

4. The Trial Court Erred in Finding That Most of the Damages Proved Were Not Caused by the August 27, 2012 Crash;

5. The Trial Court Erred in Awarding Insufficient Amount of General Damages;

6. The Trial Court Erred in Not Awarding Damages For Lost Earning Capacity; and

7. The Trial Court Erred in Dismissing the Bad Faith Claims Against Allstate Insurance Company Pursuant to [La.Code Civ.P. Article 1672].

## DISCUSSION

### *Did the Trial Court Err in Granting Allstate's Motion to Strike the Jury Trial?*

In her first assignment of error, Ms. Gaspard argues that the trial court erred in granting the motion to strike the jury trial filed by Allstate. On September 27, 2013, the clerk of court mailed a copy of the Jury Order the trial court signed pursuant to Allstate's demand for a jury trial in its answer. The Jury Order fixed

the jury bond at $4,500.00. As noted by Ms. Gaspard, the Jury Order did not set a specific date by which the bond had to be posted. Instead, the following notice was stamped beside the trial court's signature: "Bond is to be posted no later than ninety (90) days prior to trial or this matter will be placed as a bench trial at the end of the docket." Allstate did not file a jury bond.

Ms. Gaspard argues the trial court improperly rescinded its order allowing her to make a cash deposit to secure a jury trial, thereby striking the jury. Allstate counters that Ms. Gaspard waived her right to a jury trial when she did not file a jury bond after it failed to file a jury bond. Allstate further argues that she should have filed a writ application with this court to have the issue addressed before the trial commenced and by failing to do so, she waived her right to have the issue addressed on appeal.

Central to the resolution of this issue are La.Code Civ.P. arts. 1733, 1734, and 1734.1. Article 1733 provides the method for obtaining a jury trial and requires that a party who wants a jury trial to file a pleading demanding a jury and a bond. La.Code Civ.P. art. 1733(A). It also provides that a motion to withdraw a demand for a jury trial must be in writing. La.Code Civ.P. art. 1733(B). Articles 1734 and 1734.1 allow for the filing of a bond or a cash deposit to cover the costs of a jury trial. La.Code Civ.P. arts. 1734(A); 1734.1(A). A bond must be posted no later than sixty days before the trial date, while a cash deposit must be made no later than thirty days before the trial date. *Id*. If the bond or deposit is not made by the applicable date, any other party has the right to file the bond or deposit to secure a jury trial. *Id.* Rule 12.0 of the Uniform District Court Rules provides that trial courts "may not require that the bond be filed or the costs paid more than 180 days before trial" and that a litigant's failure to timely post a jury bond or deposit "constitute[s] a waiver of trial by jury."

4

In *Marshall v. Air Liquide-Big Three, Inc.*, 11-990, p.15 (La.App. 4 Cir. 9/7/12), 107 So.3d 13, 26, *writs denied*, 12-2384 (La. 12/14/12), 104 So.3d 451, the court held:

> The right to a jury in a civil trial is not constitutionally mandated. *Riddle v. Bickford*, 00-2408, p. 5 (La. 5/15/01), 785 So.2d 795, 799. If a "jury trial is not timely requested or sufficient bond not timely filed, the litigant loses the statutory right to a jury trial." *Riddle*, 00-2408 at p. 7, 785 So.2d at 799, citing *Hall v. K-Mart*, 99-0619 (La.App. 4 Cir. 3/1/00), 755 So.2d 1020 (untimely jury request), also citing *Littleton v. Wal-Mart Stores, Inc.*, 99-390 (La.App. 3 Cir. 12/01/99), 747 So.2d 701 (untimely cash deposit).

In her Motion to Fix Cash Bond, Ms. Gaspard acknowledged receipt of the September 27, 2013 Jury Order and that Allstate did not file a bond. She contends, however, that Allstate's failure to file a jury bond was a ploy to prevent her from having a jury trial. Her argument ignores that Article 1734(A) provides other parties "an additional ten days to file the bond," if the party who requested the bond does not file it. *See also*, La.Code Civ.P. art. 1734.1(A). Therefore, Ms. Gaspard had the right to secure a jury trial by filing a jury bond when Allstate failed to do so, but she did not. Accordingly, her failure to post the bond denied her a jury trial, not the trial court or Allstate.

Despite her protests that she desired a jury trial, Ms. Gaspard proceeded to trial without seeking review by this court of the trial court's rescission of its order allowing her to post a cash jury deposit and denial of her request for a jury trial. In *Holmes v. Peoples State Bank*, 35,072, p. 6 (La.App. 2 Cir. 9/26/01), 796 So.2d 176, 181, *writ denied*, 01-3139 (La. 2/1/02), 808 So.2d 342, *cert. denied*, 537 U.S. 897, 123 S.Ct. 197 (2002), the court held:

> [T]he law is clear that when the court erroneously grants (or, in our view, refuses) a jury trial, the objecting party cannot wait until verdict and then decide whether to appeal; he must complain "prior to trial, either by application for writs or other appropriate means." *Brown v. General Motors Corp.*, 95-245 (La.App. 5 Cir. 10/18/95), 662 So.2d 531, *writ denied*, 95-3034 (La. 2/16/96), 667 So.2d 1055.

Ms. Gaspard waived her right to complain on appeal of the trial court's rescission of its order granting her the opportunity to make a cash deposit for a jury trial and trying the case in a bench trial.

### *Did the Trial Judge Err in Not Recusing Himself?*

Ms. Gaspard first raised the issue of recusal in her motion for new trial. She also filed a separate motion to recuse the trial judge on July 21, 2017, in which she identified a number of reasons why the trial judge is biased and cannot be impartial. She argues that her attorney's candidacy for state legislator against the trial judge's brother in the 1990s caused the trial judge to be biased against her attorney. She references newspaper articles that were written during that time period and an order issued by another judge in 2000 that recused the trial judge below from continuing as judge in that matter. She also describes a conflict that developed between her attorney and the trial judge when her attorney, then a state legislator, sought to have the trial court's district redrawn such that the electorate that voted the trial judge into office would be redistricted to another district. She also cites occasions on which her attorney informed former clients of the trial judge, that the trial judge had committed malpractice while representing them. There are no references to current events or incidents that indicate the trial court is biased or prejudiced against Ms. Gaspard's counsel.

The Code of Civil Procedure identifies five situations in which a judge "shall be recused." La.Code Civ. P. art. 151(A). The only situation that might be applicable herein is when the trial judge:

> (5) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys or any witness to such an extent that he would be unable to conduct fair and impartial proceedings.

6

*Id.* A judge "has full power and authority to act in the cause," until he recuses himself or a motion to have him recused is filed. La.Code Civ.P. art. 153. A motion to recuse must be filed before trial. La.Code Civ.P. art. 154. A judge can recuse himself from any case where "a ground for recusal exists." La.Code Civ.P. art. 152.

In *In re Eleanor Pierce (Marshall) Stevens Living Trust*, 17-111, 17-112, pp. 13-14 (La.App. 3 Cir. 10/4/17), 229 So.3d 36, 47 (footnote omitted), *writ denied*, 17-1868 (La. 1/29/18), 233 So.3d 613, another panel of this court addressed a situation in which the party seeking recusal of the trial judge argued, as Ms. Gaspard does, that Canon 3(C) of the Code of Judicial Conduct provides the standard for judicial recusal but concluded otherwise, explaining:

> Significantly, Article 151 "do[es] not include a 'substantial appearance of the possibility of bias' or even a 'mere appearance of impropriety' as causes for removing a judge from presiding over a given action." *Slaughter [v. Board of Sup'rs of Southern Univ.*, 10-1114 (La.App. 1 Cir. 8/2/11), 76 So.3d 465, 471, *writ denied*, 11-2112 (La. 1/13/12), 77 So.3d 970]. It instead requires a finding of actual bias or prejudice that is of a substantial nature, and not one based on merely conclusory allegations. *Covington v. McNeese State Univ.*, 10-0250 (La. 4/5/10), 32 So.3d 223. Furthermore, and as a foundational point, it is important to recall that "[a] judge is presumed to be impartial." *Slaughter*, 76 So.3d at 471. Thus, while we conclude that a court considering a motion to recuse directed at another judge may be informed by the contours of the Code of Judicial Conduct in its analysis of La.Code Civ.P. art. 151(A)(4), the reviewing judge's ultimate inquiry continues to question the existence of bias, prejudice or interest in the cause or outcome under that Article.

*See also Pyles v. Weaver*, 06-348, 06-644 (La.App. 4 Cir. 5/16/07), 958 So.2d 753, *writ denied*, 07-1674 (La. 11/2/07), 966 So.2d 603.

In *Boone v. Reese*, 04-979 (La.App. 3 Cir. 12/8/04), 889 So.2d 435, the plaintiff assigned error with the trial judge's failure to recuse himself due to his former employment with one of the defendants. The plaintiff did not file a motion to recuse the trial judge before the matter proceeded to trial. Another panel of this

7

court held that the plaintiff's complaint was not preserved for appeal. *See also Settle v. Bossier Parish Sch. Bd.,* 47,644 (La. App. 2 Cir. 7/3/12), 93 So.3d 1284, *writ denied*, 12-1569 (La. 7/11/12), 92 So.3d 347, which held that a party who fails to file a motion to recuse the judge prior to trial as required by La.Code Civ.P. art 154, despite having knowledge of the grounds for recusal waives his right to urge recusal.

Ms. Gaspard cites events that occurred twenty years ago as objective evidence that the trial judge knew he could not be impartial in trying her case. We have closely reviewed the record in this matter in conjunction with the plaintiff's arguments and find no objective evidence of the trial court being biased or impartial in the trial proceedings. Also, counsel for Ms. Gaspard knew on February 2, 2017, more than five weeks before the trial date, that her case would be decided by the trial judge, yet counsel did not to file a motion to recuse the judge before trial. Therefore, this complaint was not preserved for appeal.

### *Did the Trial Court Err in Denying the Plaintiff's Motion for a New Trial?*

In her third assignment of error, Ms. Gaspard argues the trial court erred in denying her motion for new trial without holding a contradictory hearing on the motion. She cites La.Code Civ.P. art. 1972, which provides, in pertinent part: "A new trial shall be granted, upon contradictory motion of any party . . . (1) "[w]hen the verdict or judgment appears clearly contrary to the law and the evidence" and "(2) [w]hen the verdict or judgment appears clearly contrary to the law and the evidence."

In *Pittman v. Pittman*, 01-2528, p. 5 (La.App. 1 Cir. 12/20/02), 836 So.2d 369, 373, *writ denied*, 03-1365 (La. 9/19/03), 853 So.2d 642, the court addressed this issue, explaining:

[A] motion for a new trial does not always necessitate a contradictory hearing. *Sonnier v. Liberty Mutual Ins. Co.*, 258 La. 813, 821, 248 So.2d 299, 302 (La.1971). But where the motion for new trial presents "the possibility that a contradictory motion might develop grounds for the trial judge to change his mind about his rulings . . .," the Code of Civil Procedure may "clearly require" that a motion for new trial be set for contradictory hearing. *Sonnier*, 258 La. at 821-822, 248 So.2d at 302-303. Accordingly, we review the motion for new trial and attendant affidavits to analyze whether "the allegations in the motion were such as would 'clearly require' a contradictory hearing." *Evans v. Ivy*, 428 So.2d 886, 888 (La.App. 1 Cir.1983).

In her motion for new trial, Ms. Gaspard stated five grounds for a new trial; however, she only outlined the pertinent facts and presented argument regarding two of those grounds: the denial of jury trial and the trial judge's self-recusal. She assigns error with only four of the stated issues: the denial of a jury, self-recusal of the trial judge; the denial her claims for penalties and attorney fees, and the trial court's judgment is contrary to the evidence. The stated, but unaddressed, issues are the trial court's failure to consider a motion in limine during the trial and the trial court's refusal to allow her to present the testimony of two witnesses.

As previously discussed, the asserted grounds for the trial court's self-recusal were known to Ms. Gaspard's counsel long before this matter went to trial. As held in *Boone*, 889 So.2d 435, and *Settle*, 93 So.3d 1284, Ms. Gaspard's failure to seek recusal as provided in La.Code Civ.P. art. 154 waived her right to now urge recusal. *See also Pyle,* 958 So.2d at 760, where the court held that for the plaintiff to prove the trial court's denial of her motion for new trial constituted an abuse of discretion that warranted reversal, she must "show that [the trial judge's] failure to self-recuse affected the outcome of the trial."

Our review of the record reveals no objective evidence of bias by the trial judge, and as discussed below, there is no evidence that the trial judge's failure to self-recuse himself affected the outcome of the trial. Furthermore, the motion for new trial does not show that a contradictory hearing might have caused the trial

court to reconsider its earlier rulings and findings of fact. Accordingly, we find no error with the trial court's denial of the motion for new trial without holding a contradictory hearing.

### *Did the Trial Court Err in Finding that Most of the Plaintiff's Damages were Not Caused by the Accident?*

In this assignment of error, Ms. Gaspard argues the trial court erred in finding that the August 2012 accident caused her to suffer only an aggravation of injuries she sustained in her May 2008 accident and did not cause any additional injuries.

As plaintiff, Ms. Gaspard bears the burden of proving, by a preponderance of the evidence, "a causal relationship between the injury sustained and the accident which caused the injury." *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603, 94-2615, p. 3 (La. 2/20/95), 650 So.2d 757, 759. To carry her burden of proof, she must prove "through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident." *Id.* Proof is sufficient to constitute a preponderance "when the entirety of the evidence, both direct and circumstantial, shows the fact or causation sought to be proved is more probable than not." *Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr.*, 564 So.2d 654, 664 (La.1989).

Causation is an issue of fact subject to the manifest error standard of review. *Rando v. Anco Insulations, Inc.*, 08-1163, 08-1169 (La. 5/22/09), 16 So.3d 1065. To reverse a trial court's determination of a fact under the manifest error standard, an appellate court must review the record in its entirety and find that a reasonable factual basis does not exist for the finding and that the record establishes the fact finder is clearly wrong or manifestly erroneous. *Stobart v. State, Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993).

As the trier of fact, a trial court determines the credibility of the witnesses and has the prerogative of accepting or rejecting some or all of the witnesses' testimony, including expert witness testimony. *Ryan v. Zurich Amer. Ins. Co.*, 07-2312 (La. 7/1/08), 988 So.2d 214. The trial court's findings of fact, credibility evaluations, and inferences of fact should not be disturbed on appeal if they are reasonable. *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106 (La.1990). On review, an appellate court "must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently." *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC,* 14-2592, p. 9 (La.12/8/15), 193 So.3d 1110, 1116.

Just over four years before the August 2012 accident, on May 4, 2008, Ms. Gaspard was involved in another rear-end collision. The trial court held that the August 2012 accident aggravated Ms. Gaspard's pre-existing condition for six months. Ms. Gaspard contends, however, that she suffered new injuries in the August 2012 accident and that the trial court was manifestly erroneous in finding otherwise. Specifically, she argues that the August 2012 accident caused a previously injured disc in her cervical spine at C5-6, to herniate and dislocated her left shoulder.

The medical evidence shows that after the May 2008 accident, Ms. Gaspard complained of pain in her neck, left shoulder, and left arm. She also reported discomfort in the back of her left hand and trouble sleeping on that side. A 2008 MRI of her neck showed small left-sided disc herniations at C4-5 and C5-6 with some protrusion on the left side. In September 2010, Ms. Gaspard complained of left-sided neck and arm pain with numbness in three fingers on her left hand. Her pain was significantly higher at that time. Ms. Gaspard treated with Dr. Wyble through June 2011.

11

In January 2011, Ms. Gaspard began treating regularly with Dr. Tracy Richardson, a chiropractor.  She complained of pain radiating down her left arm with tightness in the middle, ring, and pinky fingers.  Ms. Gaspard indicated on her patient summary form that she had left neck, arm, and shoulder pain, as well as headaches since the May 2008 accident.  In 2011, Ms. Gaspard also complained of difficulty lifting things and reported on a patient form, "I can barely lift anything." She also complained of sleep disturbance because of her left arm in 2011.  She saw Dr. Richardson forty-one times between January 2011 and June 28, 2012, her last visit before the August 2012 accident.  During that time, her complaints waxed and waned.  Dr. Richardson testified that as of June 28, 2012, he considered her to be approaching maximum medical improvement but acknowledged that it was more likely than not she would continue to have some level of pain and discomfort in her neck, left arm, and left shoulder.

The August 2012 accident occurred at 6:40 in the morning as Ms. Gaspard was driving to work.  She did not go to the emergency room after the accident as she had after the May 2008 accident.  After work that day, she returned to Dr. Richardson, complaining only of a sore neck.  Thereafter, Ms. Gaspard's complaints related to her neck, left shoulder, left arm, and occasional headaches, just as before the accident.  She rated her pain as threes and fours, with the exception of September 24.  On that day, she complained of a headache that she rated seven.  She also complained of a headache on October 3, that she rated seven. On October 10, Ms. Gaspard rated her pain as two, and on October 17, she rated it as one.  Thereafter, until early February 25, 2013, Ms. Gaspard's complaints to Dr. Richardson were essentially identical to her complaints before the August 2012 accident:  complaints of pain in her neck, left arm, and left shoulder which she rated as one to two.  When she returned on February 11, 2013, she rated her left

arm pain as one to two and her other complaints as one. Two weeks later, Ms. Gaspard returned with complaints of increased pain in her neck and left arm which she rated as a seven. She also complained of pain in her left shoulder which she rated as nine and a headache she rated as seven.

After February 2013, Ms. Gaspard treated with Dr. Edward Scott Yerger, an orthopedist, who diagnosed her shoulder complaints as multidirectional instability (MDI) of her left shoulder. Dr. Yerger testified MDI was a congenital condition caused by laxity of the shoulder muscles that he described as a chronic condition that can be exacerbated by an injury.

Ms. Gaspard then sought treatment with Dr. John B. Sledge III, an orthopedic surgeon who subspecializes in spine-related issues and joint-related problems. Dr. Sledge ordered a new MRI of her neck and an MRI of her left shoulder. He opined Ms. Gaspard's new cervical MRI, showed a natural progression of C4-5 changes with an extruded fragment depicted on the 2008 MRI having been resorbed. He further testified that the MRI showed a new left-sided paracentral disc herniation with extruded fragment at C5-6. Dr. Sledge attributed this herniation and extruded fragment to the August 2012 accident; however, he agreed that Ms. Gaspard had some C5-6 pathology in 2008. In his opinion, the changes at C5-6 had to occur in a more acute and traumatic fashion than natural progression due to the extruded fragment.

Dr. Sledge acknowledged that Ms. Gaspard had experienced an acute change of circumstances in 2010 and that her symptoms at that time could correlate with her C5-6 issues. He also admitted that without additional testing having been performed when her complaints increased, there is no way to say whether those complaints were caused by the C5-6 herniation and fragment. Nevertheless, he opined that her symptoms alone do not explain the C5-6 changes and that there

must have been an event to explain the injury that generated those specific symptoms.

Allstate had Ms. Gaspard examined by Dr. Michael Williams, an orthopedic surgeon who specializes in shoulders and elbows, and Dr. Neil Romero, an orthopedic surgeon with a subspecialty in the spine including the neck. Dr. Williams diagnosed Ms. Gaspard's left shoulder pain as capsulitis or frozen shoulder. Although he did not agree with Dr. Yerger's diagnosis of MDI, he agreed with his assessment that Ms. Gaspard's shoulder complaints are referred pain from her neck. Dr. Williams also disagreed with Dr. Sledge's diagnosis of dislocated shoulder, explaining that there would be obvious damage on the shoulder socket if her shoulder had been dislocated, and no such damage appeared on the MRI. He further explained that a dislocated shoulder causes such pain and discomfort that Ms. Gaspard most likely would have complained of pain at the time of the accident or shortly thereafter. As previously noted, Ms. Gaspard complained only of a sore neck the day of that accident; she did not complain of shoulder pain.

In January 2017, Dr. Romero examined Ms. Gaspard in connection with her neck pain. Based on his examination, Dr. Romero testified that his examination was essentially benign with the exception of complaints of pain and mild decreased range of motion. He compared the two MRIs of Ms. Gaspard's neck and noted that the July 2015 MRI showed a mild progression of issues at C4-5 with more progression of the issues at C-5-6. Based on her increased complaints of left arm, left shoulder, and neck pain with radiculopathy into her hand to Dr. Wyble in 2010, he opined those complaints were consistent with her current complaints which he felt were more progressive. In Dr. Romero's opinion, Ms. Gaspard's 2008 complaints and symptoms were consistent with the 2008 MRI, but her increase in

14

complaints and symptoms that began in 2010 and continued thereafter were consistent with the 2015 MRI. In his opinion, Ms. Gaspard suffered an aggravation of her pre-August 2012 symptoms for three months or so then was back at her pre-accident level. Dr. Romero did not attribute any change between the 2008 and 2015 MRIs to the August 2012 accident.

The trial court concluded that Ms. Gaspard more likely than not suffered an aggravation of her condition that pre-existed the August 27, 2012 accident and that this aggravation lasted until early February 2013. The expert medical testimony conflicts with regard to the disc herniation at C5-6 and whether it was caused by the August 2012 accident or whether it was a natural progression of the condition evidenced on the 2008 MRI. It also conflicts with regard to the diagnosis for her left shoulder. Ms. Gaspard's complaints waxed and waned before and after the accident. As held by the trial court, Ms. Gaspard's complaints after the August 2012 accident returned to her pre-existing baseline of ones and twos that she had before the accident. We find the trial court's conclusion is reasonable and, therefore, not manifestly erroneous.

### *Were the Trial Court's Damage Awards Insufficient?*

The trial court awarded Ms. Gaspard medical expenses in the amount of $3,314.37 and damages in the amount of $8,000.00 for six months of pain and suffering. Ms. Gaspard complains that these awards are too low.

An appellate court can disturb a trial court's award of general damages only if the record clearly shows that the award constitutes an abuse of discretion. *Thibodeaux v. Donnell*, 16-570 (La. 1/20/17), 219 So.3d 274. We note at this point, that to recover from a UM insurer, an insured must establish that "the tortfeasor was liable for damages in an amount in excess of the tortfeasor's liability insurance policy limits. *Butler v. Allen,* 00-1726; p. 5 (La.App. 1 Cir. 9/28/01),

15

808 So.2d 746, 749, *writ denied,* 01-2924 (La. 2/1/02), 808 So.2d 331. Accordingly, Allstate is not liable to Ms. Gaspard her damages exceed $50,000.00.

Although this court might have awarded more than $8,000.00 for six months of pain and suffering if it had been the trier of fact, that is not the standard of review. *Bouquet v. Wal-Mart Stores, Inc.*, 08-309 (La. 4/4/08), 979 So.2d 456. Under the circumstances of this case, we cannot say that the award is an abuse of discretion.

Special damages, such as medical expenses, must be proved with some degree of certainty. *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70. Special damages must be proved by a preponderance of the evidence. *Cormier v. Colston*, 05-507 (La.App. 3 Cir. 12/30/05), 918 So.2d 541. Our review of Ms. Gaspard's medical records shows that her medical treatment from the date of the accident through February 11, 2013, was by Dr. Richardson and that the trial court's award of $3,314.37 is accurate and not an abuse of discretion.

### Did the Trial Court Err in Not Awarding Damages for Lost Earning Capacity?

Ms. Gaspard argues the trial court erred in determining that she suffered a loss of earning capacity. A loss of earning capacity award is not based merely upon the difference between an injured person's earnings before and after a disabling injury, but also on the loss or reduction of his ability to earn money. *Hobgood v. Aucoin,* 574 So.2d 344 (La.1990). Ms. Gaspard did not assert a claim for lost wages because she did not miss any work due the accident. Based on the trial court's conclusion that Ms. Gaspard suffered only a six-month aggravation of her pre-existing condition, we find no error with its failure to award her damages for loss of earning capacity.

16

***Did the Trial Court Err in Dismissing Ms. Gaspard's Claims for Penalties and Attorney Fees?***

After Ms. Gaspard rested her case, Allstate moved for an involuntary dismissal of her claims for penalties and attorney fees under La. R.S 22:1982 and 1973. These two statutes outline the obligations insurers owe to their insureds to timely and fairly adjust claims upon receipt of proof of damages covered under a policy of insurance and the consequences for an insurer's failure adjust such claims as provided by the statutes. The trial court granted the motion and dismissed those claims. Ms. Gaspard argues the trial court erred in doing so.

As explained above, Allstate had no duty to pay Ms. Gaspard damages until she established that her damages exceeded $50,000.00. Having determined that the trial court's damage awards totaling $11,314.37 are not manifestly erroneous, we need not address this assignment of error.

## DISPOSITION

The trial court's judgment is affirmed. All costs are assessed to Jacqueline Gaspard.

**AFFIRMED.**